IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**CATINA PARKER**, *as Personal Representative of the Estate of Leonard Parker, Jr., deceased*            **PLAINTIFF**

**v.**            **CIVIL ACTION NO. 1:21-cv-00217-HSO-BWR**

**CITY OF GULFPORT,** *a municipal corporation,*
**JASON CUEVAS**, *in his individual and official capacities,* and
**JOHN DOE OFFICERS 1-5** *in their official and individual capacities*            **DEFENDANTS**

## ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL RESPONSES TO PLAINTIFF'S RULE 31 QUESTIONS TO DEFENDANT JASON CUEVAS

BEFORE THE COURT is Plaintiff Catina Parker's Motion to Compel Responses to Plaintiff's Rule 31 Questions to Defendant Jason Cuevas [103]. Defendant Jason Cuevas has filed a Response [106] and Parker a Reply [107]. Having considered these submissions, the record, and applicable law, the Court finds that Parker's Motion to Compel should be granted and Cuevas compelled to answer Parker's Rule 31 Questions. The Questions are narrowly tailored to reveal what Cuevas knew, when he knew it, and what actions or inactions he took considering this knowledge.

### I. BACKGROUND

On February 1, 2020, Gulfport Police Officer Jason Cuevas responded to a suspected incident of disorderly conduct at a private residence. According to the

operative pleading, Leonard Parker, Jr. was reversing his vehicle out of the residence's driveway, when Officer Cuevas fired his handgun three times at him, striking him in the head and killing him. Pl.'s Sec. Am. Compl. [30] at 3-6. On June 23, 2021, Leonard Parker, Jr.'s personal representative, Catina Parker, brought this suit alleging, among other things, that Cuevas violated Leonard Parker Jr.'s constitutional rights by unreasonably seizing him in violation of the Fourth Amendment to the United States Constitution. Parker sued the City of Gulfport and Cuevas in his individual capacity. Pl.'s Compl. [1] at 5-7.

In response to the allegations against him individually, Cuevas asserted qualified immunity. Def.'s Answer [14] at 1. Parker's Motion to Conduct Limited Discovery narrowly tailored to the issue of qualified immunity was granted. Order [45]. Before Cuevas's deposition, his counsel informed Parker's counsel that Cuevas would not answer questions about his police training and knowledge of Gulfport Police Department policy because those questions were not relevant to the issue of qualified immunity. Def.'s Resp. [106] at 3. According to Cuevas, the questions were improper because they were not limited "to what Officer Cuevas was perceiving on the scene on February 1, 2020." *Id.* Parker's counsel counterargued that what Cuevas knew at the time he fired his weapon, including through his police training and Gulfport Police Department policy, is relevant to determining whether Cuevas's actions were objectively reasonable. Pl.'s Mot. [103] at 5.

2

A telephonic discovery conference was held regarding this discovery dispute. Minute Entry of June 28, 2023. During the conference, Parker's counsel agreed to propound written questions to Cuevas pursuant to Federal Rule of Civil Procedure 31. The twelve questions propounded follow:

> 1. Based on your personal knowledge of your training as a Gulfport Police Officer, what was your understanding on February 1, 2020, of when a Gulfport Police Officer can discharge a firearm to strike a motor vehicle?
>
> 2. Based on your personal knowledge of the Gulfport Police Department Force Response Policy (PL Parker 000063-000076), what was your understanding on February 1, 2020, of when a Gulfport Police Officer can discharge a firearm to strike a motor vehicle?
>
> 3. Based on your personal knowledge of your training as a Gulfport Police Officer, on February 1, 2020, would a Gulfport police officer be permitted to employ deadly force against an individual who does not pose a threat of death or physical harm?
>
> 4. Based on your personal knowledge of the Gulfport Police Department Force Response Policy (PL Parker 000063-000076), on February 1, 2020, would a Gulfport police officer be permitted employ deadly force against an individual who does not pose a threat of death or physical harm?
>
> 5. Based on your personal knowledge of your training as a Gulfport Police Officer, what was your understanding on February 1, 2020, of when a Gulfport Police Officer can discharge a firearm to prevent flight or escape?
>
> 6. Based on your personal knowledge of the Gulfport Police Department Force Response Policy (PL Parker 000063-000076), what was your understanding on February 1, 2020, of when a Gulfport Police Officer can discharge a firearm to prevent flight or escape?
>
> 7. Based on your personal knowledge of your training as a Gulfport Police Officer, what was your understanding on February 1, 2020, of how a Gulfport Police Officer should assess the threat by a vehicle?

8.  Based on your personal knowledge of the Gulfport Police Department Force Response Policy (PL Parker 000063-000076), what was your understanding on February 1, 2020, of how a Gulfport Police Officer should assess the threat by a vehicle?

9.  Based on your personal knowledge of your training as a Gulfport Police Officer how had you been trained as of February 1, 2020, to approach a vehicle in the street safely?

10.  Based on your personal knowledge of your training as a Gulfport Police Officer, how had you been trained as of February 1, 2020, to remove yourself from the path of a moving motor vehicle?

11.  Based on your personal knowledge how had you been trained as of February 1, 2020, as a Gulfport Police Officer to "stabilize the situation and reduce the immediacy the threat sothat more time, options, and resources can be called upon to resolve the situation without the use of force or with a reduction in the force necessary", as described in the Gulfport Police Department Force Response Policy (PL Parker 000064, p 2, §3(f))?

12.  Based on your personal knowledge, as of February 1, 2020, how had you been trained as a Gulfport Police Officer to "identify [yourself] and state [your] intent to shoot, where feasible" before using a firearm, as described in the Gulfport Police Department Force Response Policy (PL Parker 000064, p4, §4)?

Pl.'s Rule 31 Written Questions to Cuevas [107-1].

A deposition to record Cuevas's answers to the Rule 31 Questions followed. A transcript of the deposition shows that Cuevas's counsel objected to all twelve Rule 31 Questions and told Cuevas that he would permit him to "respond to a question of whether you felt like both constitutionally and by policy you had a right to discharge your firearm at the vehicle that constituted an imminent threat to you as a police officer." Cuevas Dep. Tr. [107-2] at 6. Cuevas responded, "On that night, you are correct; it was my understanding that I was permitted by a constitutional law as well

as policy to discharge my firearm at a moving vehicle which it permitted -- or presented a deadly force situation to myself." *Id.*

Parker filed her Motion to Compel Cuevas to answer the Rule 31 Questions, arguing that the Questions were relevant to determine whether Cuevas's actions in firing his weapon were objectively reasonable. Pl.'s Mot. [103] at 5. Cuevas responded by arguing that the scope of Cuevas's deposition was properly limited to "what Officer Cuevas did or did not do on February 1, 2020." Def.'s Resp. [106] at 2-3. In reply, Parker maintained that Cuevas "openly misconstrue[d] the qualified immunity analysis, attempting to convert the 'objective reasonableness' inquiry in *Graham* [*v. Connor*, 490 U.S. 386, 396–97 (1989)] into a subjective reasonableness standard that looks solely to what Defendant Officer Cuevas perceived at the time he shot and killed Mr. Parker." Pl.'s Reply [107] at 1. Parker asserted that "[t]he more appropriate inquiry is what a reasonable officer, with the same training and information available to them, would have reasonably perceived." *Id.*

## II. DISCUSSION

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472

U.S. 511, 526 (1985). "[W]here the plaintiff has pleaded facts which, if true, would overcome immunity, but the court finds itself unable to rule on the immunity defense without further clarification of the facts[,] . . . [t]he district court may allow discovery narrowly tailored to uncover only those facts needed to rule on the immunity claim." *In re Paxton*, 60 F.4th 252, 257 (5th Cir. 2023) (internal citations omitted).

"The Fourth Amendment prohibits objectively unreasonable force." *Edwards v. City of Balch Springs, Texas*, 70 F.4th 302, 311 (5th Cir. 2023) (internal citation omitted). "To prevail on an excessive-force claim, a plaintiff must show (1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable." *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 275 (5th Cir. 2015) (internal citation omitted). An "officer's reasonableness in using force – deadly or non-deadly – is analyzed under an objective standard in light of the facts and circumstances confronting the officer, without regard to his or her underlying intent or motivation." *Id.* (internal quotation and citation omitted). "In *Graham v. Connor*, the Supreme Court directed courts determining an officer's objective reasonableness to pay 'careful attention to the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham,* 490 U.S. at 396).

6

The Court judges the "reasonableness of an officer's conduct 'objectively,' that is, without reference to the subjective intent or motivation that underlies the officer's conduct." *Lytle v. Bexar Cnty., Tex.*, 560 F.3d 404, 411 (5th Cir. 2009) (quoting *Graham*, 490 U.S. at 396). Reasonableness is considered "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S. at 396. Allowance must be made "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

Parker argues that the Rule 31 Questions to Cuevas are narrowly tailored to reveal what Cuevas knew, when he knew it, and what actions (or inactions) he took in light of this knowledge. [103] at 6 (citing *Webb v. Livingston,* 618 F. App'x 201, 211 (5th Cir. 2015) (finding "the limited discovery is narrowly tailored. The ordered discovery seeks to reveal what Appellants knew, when they knew it, and what actions (or inactions) they took in light of this knowledge."). Parker cites several cases from the Court of Appeals for the Fifth Circuit supporting her position that Cuevas's personal knowledge of his police training and Gulfport Police Department's use of force policy are relevant in analyzing the objective reasonableness of his use of force under the totality of the circumstances. *See Timpa v. Dillard,* 20 F.4th 1020 (5th Cir. 2021); *Darden v. City of Fort Worth,* 880 F.3d 722 (5th Cir. 2018); *Gutierrez v. City of San Antonio,* 139 F.3d 441 (5th Cir. 1998).

7

In *Darden v. City of Fort Worth,* the Fifth Circuit held that "[w]hile we certainly do not suggest that the violation of police department policies is sufficient to make out a constitutional violation, we have found their existence and corresponding notice to officers relevant in analyzing the reasonableness of a particular use of force under the totality of the circumstances." 880 F.3d at 732 n.8. In *Timpa v. Dillard,* the Fifth Circuit, relying on *Darden,* found "[t]he risks of asphyxiation in this circumstance should have been familiar to [the officer] because he had received training on the use of a prone restraint to control subjects in a state of excited delirium." 20 F.4th at 1031. In *Gutierrez v. City of San Antonio,* the Fifth Circuit observed that "it may be difficult to conclude that the officers acted reasonably if they performed an action that had been banned by their department or of whose dangers in these circumstances they had been warned." 139 F.3d at 449.

Cuevas attempts to distinguish these cases by arguing that

> "[e]ach case cited to by the Plaintiff relates to a particular form of bodily restraint, such as hog-tying or a prone restraint, and a determination had to be made by the court as to whether the <u>particular</u> restraint used (i.e., hog-tying or prone restraint) was excessive (because the suspect was not actively resisting and instead was struggling to breathe) or whether the <u>particular</u> restraint could possibly lead to death. *Timpa v. Dillard,* 20 F.4th 1020, 1029 (5th Cir. 2021).

Resp. [106] at 8 (emphasis supplied).

In Reply, Parker defeats Cuevas's argument by citing the Fifth Circuit's opinion in *Lytle v. Bexar*, where an officer fatally shot a teenage passenger in a fleeing car. 560 F.3d 404, 407 (5th Cir. 2009). The officer alleged that he fired immediately

8

after the car backed up toward him, while the plaintiff alleged that the car was "three or four houses down the block" when the officer fired. *Id.* at 408. The district court found that a genuine issue of material fact existed on the issue of objective reasonableness and denied the officer's pretrial motion for summary judgment on qualified immunity. *Id.* In affirming the district court's denial of qualified immunity at the summary judgment stage, the Fifth Circuit provided in pertinent part:

> Further, because we must look at all of the facts and circumstances relevant to the reasonableness of O'Donnell's conduct, **he is mistaken to focus entirely on the threat of harm**. Even were we to agree with O'Donnell as to the threat the Taurus posed, we would be remiss not to consider O'Donnell's conduct in response to that threat. It is unclear how firing at the back of a fleeing vehicle some distance away was a reasonable method of addressing the threat. **Indeed, there is some evidence in the record that O'Donnell had been previously informed of the potential danger and futility of shooting at a vehicle.**

*Id.* at 412 (5th Cir. 2009) (emphasis added).

Parker has shown that Cuevas should be compelled to answer the Rule 31 Questions because they are narrowly tailored to reveal what Cuevas knew, when he knew it, and what actions (or inactions) he took considering this knowledge. *See Webb,* 618 F. App'x at 211; *see also Cole v. Carson*, 935 F.3d 444, 456 (5th Cir. 2019) ("And of course, what matters is what the defendant officers knew when they shot Ryan."); *Hinojosa v. Livingston*, 807 F.3d 657, 671 (5th Cir. 2015) ("The factual questions of what Defendants knew, when they knew it, and whether they investigated and considered possible remedial measures, are undoubtedly necessary

9

to answer before determining whether Defendants acted reasonably in light of clearly established law.").

### III. CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiff Catina Parker's Motion to Compel Responses to Plaintiff's Rule 31 Questions to Defendant Jason Cuevas [103] is **GRANTED**.

**SO ORDERED**, this the 16th day of August, 2023.

*s/ Bradley W. Rath*

BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE