# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| Catina Parker, as Personal Representative of the Estate of Leonard Parker, Jr., deceased, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No.   1:21-cv-217 HSO-RHWR |
| The City of Gulfport, a municipal corporation; Jason Cuevas , in his individual and official capacity; | ) ) ) ) | **PLAINTIFFS DEMAND A TRIAL BY JURY** |
| Defendants. | ) ) ) | |

## THIRD AMENDED COMPLAINT AT LAW

NOW COMES the Plaintiff, Catina Parker, as Personal Representative of the Estate of Leonard Parker, Jr., deceased, by and through her attorneys, Romanucci and Blandin, LLC and Coxwell and Associates, PLLC, for Plaintiff's Complaint at Law against The City of Gulfport, a municipal corporation, and Jason Cuevas, individually and in his official capacity; in their official and individual capacities, pleading hypothetically and in the alternative, states as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331.

2. Venue is proper in this Court under 28 U.S.C. § 1391(b) because all incidents, events, and occurrences giving rise to this action occurred in the Southern District of Mississippi. Moreover, upon information and belief, all or most of the parties reside in this Judicial District.

## THE PARTIES

3. Defendant, The City of Gulfport, is a municipal corporation organized under the laws of the State of Mississippi.

4. On and before February 1, 2020, and at all relevant times, the Defendant, City of Gulfport, a municipal corporation, maintained, as a division of said municipal corporation, a certain police department, commonly referred to as the Gulfport Police Department, in Gulfport, Mississippi (hereinafter, collectively referred to as the "Gulfport Police Department").

5. On and before February 1, 2020, and at all relevant times, Defendant Jason Cuevas was a police officer employed by the Gulfport Police Department.

6. On and before February 1, 2020, and at all relevant times, when Defendant Jason Cuevas was engaging in the complained of conduct, he was acting under color of law and in the course of his employment as a Gulfport Police Department police officer.

7. Plaintiff Catina Parker is a citizen of the United States, and at all relevant times was a resident of the City of Covington, Newton County, Georgia.

8. Plaintiff's Decedent Leonard Parker, Jr. was a citizen of the United States prior to his death, and at all relevant times was a resident of the City of Covington, Newton County, Georgia.

9. Plaintiff's Decedent's heirs include Plaintiff Catina Parker, who is his surviving spouse, as well as five children.

## GENERAL ALLEGATIONS

10. The instant case arose from events which took place in the 200 block of 25th Street of Gulfport, Mississippi.

11. On February 1, 2020, Plaintiff's decedent Leonard Parker, Jr. was attending a social gathering at a private residence in the 200 block of 25th Street in Gulfport, Mississippi ("the residence") for Stephanie Baldwin's birthday.

12. During the social gathering, there were several other people at the residence, including Stephanie Baldwin, Kimberly Bonds, Angela Jackson, Derrian Tremain Markray,

Geraldine McNair, Maxine Owens.

13. During the social gathering, Derrian Markray began to get in an argument with his girlfriend, Kimberly Bonds and became increasingly disruptive throughout the night.

14. Mr. Parker, Ms. Baldwin, and other attendees made efforts to get Mr. Markray under control throughout the night.

15. Due to Mr. Markray's disruptive behavior, Ms. Maxine Owens called the police.

16. Ms. Owens told the dispatcher that she needed the police because they had a man there who was "fighting everybody," the people at the scene were Black, and there were no weapons.

17. Mr. Parker offered to drive Mr. Markray to a hotel, and Ms. Baldwin offered to pay for the hotel room.

18. Mr. Markray calmed down and agreed to go with Mr. Parker to the hotel, so he and Mr. Parker left the house and got in Mr. Parker's truck to leave Ms. Baldwin's house.

19. Mr. Parker entered the driver's side of his GMC Sierra truck (hereinafter referred to as the "truck"), and Mr. Markray entered the front passenger side.

20. Meanwhile, Defendant Cuevas had been dispatched to Ms. Baldwin's home to investigate Mr. Markray's disorderly conduct.

21. Defendant Cuevas's dispatch was listed "Type: ASSIST CITIZEN/AGENCY" and labeled "4-LOW" priority.

22. Upon being dispatched, Defendant Cuevas was told there was a disorderly male trying to fight people in the residence who appeared to be intoxicated, and that there were no weapons.

23. At the time he was dispatched to Ms. Baldwin's home, Defendant Cuevas's police vehicle

3

was equipped with a camera on his dashboard.

24. At the time he was dispatched to Ms. Baldwin's home, Defendant Cuevas was equipped with a body-camera mounted on the front of his shirt in the middle of his chest.

25. Defendant Cuevas did not turn on his body-camera or his police vehicle's dashboard-camera footage upon dispatching or arriving at the scene.

26. As he drove to and arrived at the scene, Defendant Cuevas did not have lights and sirens activated.

27. When Defendant Cuevas arrived at Oak Avenue and 25th Street, he parked and exited his police vehicle.

28. When Defendant Cuevas parked he had not activated the lights or sirens of their vehicles to notify any nearby citizens of police presence.

29. Activating the lights and sirens of his vehicle, would have automatically turned on the dash camera.

30. At the time Defendant Cuevas parked his police vehicle, it was dark outside, but there was at least one streetlamp partially illuminating the street.

31. After Defendant Cuevas exited his police vehicle, the headlights on his vehicle turned off.

32. When he exited his police vehicle, he was far enough away from Ms. Baldwin's home so that he could only make out individual figures in Ms. Baldwin's yard but could not see what the people looked like.

33. Defendant Cuevas did not verbally identify himself as a police officer or issue any commands at that time.

34. Defendant Cuevas was dressed in his dark blue uniform.

## A. Defendant Cuevas used deadly force on Mr. Parker while Mr. Parker sat in the driver's seat of a vehicle that posed no threat whatsoever.

35. With Mr. Markray in the passenger seat of his truck, Mr. Parker began to slowly drive in reverse out of Ms. Baldwin's front yard.

36. To get out of the yard, Mr. Parker had to maneuver around other cars parked near him.

37. Ms. McNair guided Mr. Parker as he attempted to slowly back out of the precarious position.

38. As Mr. Parker backed out in his truck, Ms. Baldwin, Ms. Bonds, Ms. Jackson, and Ms. Maxine Owens stood in front of the house and observed.

39. Once Mr. Parker finished backing out, he began to drive forward very slowly, straightening the truck's wheels on 25th Street, heading east on the south side of the roadway.

40. Mr. Parker was driving so slowly as he proceeded eastbound in the truck on the south side of 25th Street that Ms. Maxine Owens and Mr. Markray described the truck as "barely moving."

41. As Mr. Parker slowly proceeded eastbound in the truck, Ms. Baldwin, Ms. Bonds, Ms. Jackson, and Ms. Shelly Owens stood in front of the house and observed.

42. Ms. McNair, having helped guide Mr. Parker as he attempted to slowly back out of the yard, watched from the middle of the roadway as Mr. Parker began to proceed eastbound in the truck.

43. Soon after Mr. Parker began to drive slowly eastbound on the south side of 25th Street, Ms. Owens saw the truck's brake lights go on.

44. The truck came to a full stop once the brake lights came on.

45. Upon seeing the truck stop on the south side of the road in front of Ms. Baldwin's next-door neighbor's home, Ms. Geraldine McNair said, "why is he stopping?"

46. After Ms. Maxine Owens commented on the truck stopping, Ms. Baldwin looked and saw that the truck had, in fact, stopped.

47. After the truck had stopped, Ms. Baldwin saw an individual, now known to be Defendant Cuevas, walking westbound on the north side of the roadway towards Ms. Baldwin's home.

48. As he walked westbound on the north side of the road, Defendant Cuevas did not believe that any individuals at or near the residence were in danger of death or serious bodily harm.

49. At the time he walked on the north side of the road, Defendant Cuevas had no information to support the belief that Mr. Parker or the passenger of the truck were the individual subject to the disorderly, or involved in the situation.

50. While the truck was stopped and Defendant Cuevas walked westbound on the north side of the road, Ms. Baldwin called out to Defendant Cuevas, saying that she had called and that "they are not armed."

51. After Ms. Baldwin called out to Defendant Cuevas, he fired his weapon at least three times towards the truck while it was at a full stop.

**B. Defendant Cuevas had no reason to believe that Mr. Parker posed an imminent threat of serious bodily injury at any time.**

52. Ms. Owens, Ms. Baldwin, Mr. Markray, Ms. Jackson, and Ms. McNair all testified that Mr. Parker had brought the truck to a full stop prior to Defendant Cuevas firing his weapon.

53. At no time did Mr. Parker exceed five miles per hour from the time of backing his car out of the yard.

54. Even when Mr. Parker was driving down the roadway, prior to making his full stop, he never exceeded five miles per hour.

55. Even when Mr. Parker was driving down the roadway, prior to making his full stop, he was not driving recklessly.

6

56. Even when Mr. Parker was driving down the roadway, prior to making his full stop, he was driving eastbound on the south side of the road, while Defendant Cuevas walked westbound on the north side of the road.

57. Defendant Cuevas had no reason to believe at any time prior to or during the shooting that the truck's driver, Mr. Parker, was trying to strike him or anyone else with his vehicle.

58. Defendant Cuevas had no reason to believe at any time prior to or during the shooting that the truck's driver, Mr. Parker, was attempting to use the truck as a deadly weapon.

59. Defendant Cuevas had no reason to believe at any time prior to or during the shooting that the truck's driver, Mr. Parker, was a threat to himself or any persons on scene, let alone a threat of death or serious bodily harm.

60. The truck never accelerated towards Defendant Cuevas.

61. The truck's engine never picked up, made a "vroom" sound, or made any other sound that would indicate it was accelerating.

62. The truck did not drive, move, or "track" in Defendant Cuevas's direction at any time.

63. Defendant Cuevas was standing to the north side of the truck and not immediately in front of the truck when he opened fire on Mr. Parker.

64. All of the bullets entered the vehicle through the far driver's side of the front windshield.

65. Immediately prior to and when Defendant Cuevas opened fire on Mr. Parker, the truck's wheels were angled straight ahead, flush with the vehicle parallel to the roadway, not angled facing Defendant Cuevas to the north.

66. Neither the truck nor its wheels were ever angled at Defendant Cuevas.

67. Defendant Cuevas was not standing in the path of the vehicle at any time prior to or during the shooting.

68. At the time that Defendant Jason Cuevas fired his weapon, he was aware that no individual, including himself, was standing in front of or in the path of Leonard Parker, Jr.'s vehicle.

69. At no point did the truck actually strike Defendant Cuevas.

70. Defendant Cuevas did not flash his light in strobe mode prior to the shooting.

71. Defendant Cuevas did not speak, give commands, or give Mr. Parker warning prior to shooting.

72. Defendant Cuevas did not take actions to alert Mr. Parker that he was in the road or had any intention of contacting the truck.

73. Defendant Cuevas did not take actions to alert Mr. Parker of his presence.

74. Defendant Cuevas did not speak with anyone at the scene prior to the shooting.

75. Defendant Cuevas had no reason to believe at any time prior to or during the shooting that the truck's driver, Mr. Parker, was taking evasive action or attempting to flee.

76. Defendant Cuevas had no reason to believe at any time prior to or during the shooting that the truck's driver, Mr. Parker, was intoxicated.

77. At no time did Mr. Parker or his passenger ever display a weapon to Defendant Cuevas or others.

78. At no time did Mr. Parker or his passenger threaten to use physical force upon Defendant Cuevas or others.

79. At no time did Mr. Parker or his passenger use physical force upon Defendant Cuevas or others.

80. Defendant Cuevas had no reason to believe at any time prior to or during the shooting that the truck's driver, Mr. Parker, had committed any crime.

81. Defendant Cuevas had no reason to believe at any time prior to or during the shooting that

the truck's driver, Mr. Parker, had stolen the truck.

82. Defendant Cuevas did not know whether the individuals in the truck had any relation to the disorderly conduct call.

83. Defendant Cuevas had no reason to believe at any time prior to or during the shooting that anyone in the truck or at Ms. Baldwin's home posed a serious threat to him or the public.

84. Defendant Cuevas knew there were several other bystanders nearby and in the direction of his shooting.

85. Defendant Cuevas had no reason to believe at any time prior to or during the shooting that anyone in the truck or at Ms. Baldwin's home was armed.

86. Defendant Cuevas could not see the driver's face and could not tell if he had a particular look on his face.

87. Defendant Cuevas did not witness anyone in the truck or outside Ms. Baldwin's house make a threatening gesture towards him.

88. The truck had its headlights on throughout the entire incident.

89. Defendant Cuevas used deadly force against Mr. Parker even though Mr. Parker presented absolutely no threat of imminent danger to him or others.

90. Defendant Cuevas did not have probable cause to believe Mr. Parker or his passenger posed a significant threat of death or serious physical injuries to Defendant police officers or others.

91. Deadly force was not necessary to prevent the escape of a fleeing felon, as no felony was suspected to have been committed.

92. The truck did not roll forward or otherwise move immediately before, during, or after the shooting.

### C. In the aftermath of the shooting, Defendant Cuevas made no efforts to administer life-saving measures.

93. After he opened fire, Defendant Cuevas holstered his weapon and approached the truck, which was still stopped, and tried to open the driver door, but it was locked.

94. The passenger, Mr. Markray, reached over Mr. Parker's body and opened the door.

95. When the door opened, Mr. Parker fell out of the truck onto the roadway, face-down.

96. Defendant Cuevas did not make any effort to help Mr. Parker as he fell out of the vehicle.

97. Defendant Cuevas kicked Mr. Parker's feet and said "he's still breathing."

98. Defendant Cuevas did not assess whether Mr. Parker had a pulse.

99. As Mr. Parker bled out on the roadway, Defendant Cuevas walked to the back of the truck to get the tag number without first securing Mr. Parker or Mr. Markray.

100. When he came back from getting the tag number, Defendant Cuevas could hear Mr. Parker breathing.

101. Defendant Cuevas only then placed Mr. Parker in handcuffs and rolled him on his back so that he was laying face up on the roadway.

102. Defendant Cuevas noticed that Mr. Parker had a lot of blood on his chest.

103. Defendant Cuevas did not apply a tourniquet.

104. Defendant Cuevas did not apply pressure to the wounds.

105. Defendant Cuevas did not administer CPR.

106. City of Gulfport Police Officer William Brewer arrived shortly after Defendant Cuevas used deadly force against Mr. Parker.

107. Officer Brewer was not on scene to witness any part of the shooting.

108. Officer Brewer turned on his body-camera upon arriving.

109. At some point after the shooting, when other police officers had arrived, Defendant

Cuevas's dashboard-camera was turned on and began recording.

110. Once he turns on his body-camera, Officer Brewer calls a "1033," then yelled, "Hey, get back!"

111. Officer Brewer then said "Jason, I got you," multiple times, referring to Defendant Cuevas.

112. Despite, Mr. Parker's injured state Officer Brewer continued to yell at Mr. Parker and Mr. Markray, saying things like "Hey, get back," "Show me your hands," "Put your hands behind your back," and "Don't you fucking move."

113. Party attendees can be heard crying in the background of Officer Brewer's body-camera recording.

114. Only then did Officer Brewer radio for medical.

115. Only then did Officer Brewer place Mr. Markray in handcuffs.

116. After Officer Brewer and Defendant Cuevas placed both individuals in handcuffs, Officer Brewer muted his body-camera so that there is no sound on the recording.

117. Defendant Cuevas claims he turned on his body-camera footage upon arriving at the scene, but he has not provided such footage and no footage of the incident appears to exist.

118. Defendant Cuevas turned on his body-camera recording after the shooting, when another officer was helping him wash the blood off of his hands.

119. On the body-camera footage, he says "I'm fucking stupid."

120. On the body-camera footage, Defendant Cuevas says "if somebody asks me to turn it off, I'm not. Not about to get in trouble."

121. Defendant Cuevas turned his body camera off five minutes after turning it on.

122. As a result of Defendants Cuevas's actions, Mr. Parker suffered gunshot wounds and died.

### D. Defendant Cuevas used deadly force in violation of City of Gulfport policies.

123. Prior to using deadly force against Mr. Parker, Defendant Cuevas had received training from the City of Gulfport on the proper use of force.

124. Defendant Cuevas used deadly force against Mr. Parker despite his knowledge of the City of Gulfport's policies and procedures on the use of force.

125. The City of Gulfport's policy on the use of force allows officers to use only the level of force that is reasonably necessary to stop the perceived threat.

126. The City of Gulfport's policy on the use of force authorizes police officers to use deadly force in only two situations 1) to defend themselves or others against serious threats of serious bodily injury or death, or 2) to stop dangerous felony flight, where there is serious imminent risk to the public of death or serious bodily injury.

127. The City of Gulfport's policy on the use of force prohibits officers from using deadly force to effect the arrest of a misdemeanor offender.

128. The City of Gulfport's policy on the use of force prohibits officers from using deadly force when it appears likely that an innocent person may be injured except in a situation that is imminently life threatening to the officer or another.

129. The City of Gulfport's policy on the use of force prohibits officers from using deadly force on a person who simply flees or evades arrest.

130. The City of Gulfport's policy on the use of force prohibits officers from using deadly force at a moving vehicle that does not pose an imminent risk of death or serious bodily injury.

## COUNT 1 – 42 U.S.C. §1983—Excessive Force
### (Catina Parker v. Jason Cuevas)

131. Plaintiff, Catina Parker, incorporates by reference all preceding paragraphs.

132. At all times relevant, Defendant Jason Cuevas was an authorized officer, agent, and/or employee of the Gulfport Police Department, and was acting in the course of his employment and under color of state law.

133. At all times relevant, it was the duty of Defendant Jason Cuevas individually and as officer, agent and/or employee of the Gulfport Police Department, to refrain from using unreasonable excessive force against others, including Leonard Parker, Jr.

134. By using deadly force against him without justification, Defendant Jason Cuevas violated Leonard Parker, Jr.'s constitutional protection from unreasonable seizure.

135. Defendant Jason Cuevas's use of deadly force against Leonard Parker, Jr. was objectively unreasonable.

136. Defendant Jason Cuevas's use of deadly force against Leonard Parker, Jr. was excessive to its need.

137. Jason Cuevas used deadly force against Leonard Parker, Jr. even though Mr. Parker was not suspected to have committed a serious crime, did not pose an immediate threat to the safety of Defendant Jason Cuevas or others, and was not actively resisting or attempting to evade arrest.

138. In light of the attendant facts and circumstances, no reasonable officer would have used deadly force against Leonard Parker, Jr.

139. Defendant Cuevas was not forced to make any split-second judgments in a tense, uncertain, or rapidly evolving situation, but rather applied deadly force against Leonard Parker, Jr. when he was sitting in the driver's seat of a stopped vehicle.

140. On February 1st, 2020,, Defendant Jason Cuevas used unreasonable and excessive force in violation of the United States Constitution by engaging in the following acts or omissions:

   a) Defendant used a level of force that Defendant knew, or should have known, was excessive when he shot Leonard Parker, Jr. without justification;

   b) Defendant used an unreasonable amount of force in relationship to the threat or force posed by Leonard Parker, Jr., who was not resisting any lawful arrest or threatening the life or safety of any individual;

   c) Defendant used deadly force against Leonard Parker, Jr. when Leonard Parker, Jr. did not pose any threat of serious bodily injury.

   d) Defendant failed to use less dangerous means of restraint; and/or

   e) Defendant failed to follow proper police procedures and adhere to a use of force continuum consistent with that used by law enforcement agencies in Mississippi.

141. At all times relevant, the aforementioned conduct of Defendant, Jason Cuevas, constituted unreasonable excessive force in violation of the United States Constitution.

142. The actions of Defendant Jason Cuevas were objectively unreasonable and were undertaken intentionally with willful indifference to Leonard Parker, Jr.'s constitutional rights.

143. The actions of Defendant Jason Cuevas would not be considered reasonable by a reasonably competent police officer in the circumstances presented at the time that Defendants used such force.

144. The actions of Defendant Jason Cuevas were undertaken with reckless indifference to the rights of Leonard Parker, Jr.

145. As a direct and proximate cause of Defendant Jason Cuevas's unreasonable and excessive use of force, Leonard Parker, Jr. experienced injuries, including physical and psychological pain and suffering, and death.

146. As a direct and proximate cause of Defendant Jason Cuevas's unreasonable and excessive

use of force, Leonard Parker, Jr.'s heirs and estate suffered losses, including loss of benefits and future earnings, and incurred medical and funeral bills.

147. As a direct and proximate cause of Defendants Jason Cuevas's unreasonable and excessive use of force, Leonard Parker, Jr.'s heirs suffered emotional distress and mental anguish, and experienced the loss of Leonard Parker, Jr.'s companionship, love, care, and protection.

WHEREFORE, Plaintiff, Catina Parker, individually and as the personal representative of the estate and heirs of Leonard Parker, Jr., respectfully requests that this Court enter judgment against Defendant Jason Cuevas , awarding compensatory damages, attorneys' fees, punitive damages, and for any further relief this Court deems just.

### COUNT 2 – Wrongful Death
### (Catina Parker v. Jason Cuevas, The City of Gulfport)

148. Plaintiff, Catina Parker, incorporates by reference all preceding paragraphs.

149. At all relevant times, Defendants Jason Cuevas acted as duly authorized agents and employees of the City of Gulfport.

150. As a direct and proximate result of the negligent and wrongful actions of Defendant Jason Cuevas, Leonard Parker Jr. suffered gunshot wounds and died.

151. As a proximate result of Defendant Jason Cuevas's Gulfport unreasonable and excessive use of force, Leonard Parker, Jr.'s heirs suffered emotional distress and mental anguish, lost and experienced the loss of Leonard Parker, Jr.'s companionship, financial support, consortium, guidance, love, care, and protection.

WHEREFORE, Plaintiff, Catina Parker, individually and as the personal representative of the estate and heirs of Leonard Parker, Jr., respectfully requests that this Court enter judgment

against Defendants Jason Cuevas, City of Gulfport, awarding compensatory damages, attorneys' fees, punitive damages, and for any further relief this Court deems just.

### COUNT 3 – Survival
### (Catina Parker v. Jason Cuevas, The City of Gulfport)

152. Plaintiff, Catina Parker, incorporates by reference all preceding paragraphs.

153. At all relevant times, Defendant Jason Cuevas acted as duly authorized agents and employees of the City of Gulfport.

154. As a direct and proximate result of the negligent and wrongful actions of Defendants Jason Cuevas, Leonard Parker Jr. suffered gunshot wounds and died.

155. As a proximate cause of Defendant Jason Cuevas's Gulfport unreasonable and excessive use of force, Leonard Parker, Jr. experienced injuries, including physical and psychological pain and suffering, and ultimately death.

156. As a proximate cause of Defendant Jason Cuevas's Gulfport unreasonable and excessive use of force, Leonard Parker, Jr's estate experienced lost future income and benefits and incurred medical and funeral expenses.

WHEREFORE, Plaintiff, Catina Parker, individually and as the personal representative of the estate and heirs of Leonard Parker, Jr., respectfully requests that this Court enter judgment against Defendants Jason Cuevas, City of Gulfport awarding compensatory damages, attorneys' fees, punitive damages, and for any further relief this Court deems just.

### COUNT 4– Violation of the Mississippi Tort Claims Act
### (Catina Parker v. Jason Cuevas, The City of Gulfport)

157. Plaintiff, Catina Parker, incorporates by reference all preceding paragraphs.

158. Plaintiff asserts that the actions of Jason Cuevas were in violation of Mississippi Code Ann.

(1972) § 11-46-1, *et seq.,* as they were committed with reckless disregard[1] to the safety and well-being of the Decedent as well as being in violation of Article III § 23 of the Mississippi Constitution.

159. As the Officers were acting in the scope and course of their employment at UMMC, UMMC is liable for their actions.

160. As a direct and proximate result of the negligent and wrongful actions of Defendants Jason Cuevas, Leonard Parker Jr. suffered gunshot wounds and died.

161. As a proximate cause of Defendants Jason Cuevas's excessive use of force, Leonard Parker, Jr. experienced injuries, including physical and psychological pain and suffering, and ultimately death.

162. As a proximate cause of Defendants Jason Cuevas's unreasonable and excessive use of force, Leonard Parker, Jr's estate experienced lost future income and benefits and incurred medical and funeral expenses.

WHEREFORE, Plaintiff, Catina Parker, individually and as the personal representative of the estate and heirs of Leonard Parker, Jr., respectfully requests that this Court enter judgment against Defendants Jason Cuevas, City of Gulfport, awarding compensatory damages, attorneys' fees, punitive damages, and for any further relief this Court deems just.

## **DEMAND FOR A JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues triable as of right by jury.

---

[1] "Reckless disregard" as used in this pleading "embraces willful and wanton conduct which requires knowingly or intentionally doing a thing or wrongful act." *Turner v. City of Ruleville*, 735 So.2d 226, 320 (Miss. 1999). "Reckless disregard usually is accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow." *Miss. Dept. of Public Safety v. Durn*, 861 So.2d 990, 995 (Miss. 2003) (citations omitted).

Respectfully Submitted,

CATINA PARKER, PLAINTIFF

/s/ Sam Harton *(pro hac vice)*

**ROMANUCCI & BLANDIN, LLC**
Sam Harton (Il. No. 6342112) (*pro hac vice*)
Bhavani Raveendran (*pro hac vice*)
Attorneys for the Plaintiff
321 N. Clark St., Ste. 900
Chicago, IL 60654
Telephone: (312) 458-1000
Facsimile: (312) 458-1004
sharton@rblaw.net
b.raveendran@rblaw.net

**COXWELL & ASSOCIATES, PLLC**
Charles R. Mullins (MB #9821)
Courtney Sanders
Attorney for the Plaintiff
Post Office box 1337
Jackson, Mississippi 39215
Telephone: (601) 948-1600
Facsimile: (601) 948-7097
chuckm@coxwelllaw.com