**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**CATINA PARKER, as Personal Representative**
**of the Estate of Leonard Parker, Jr., Deceased**                    **PLAINTIFF**

**VERSUS**                                    **NO.1:21-cv-00217-HSO-BWR**

**The CITY OF GULFPORT, a municipal**
**corporation; JASON CUEVAS, in his individual**
**and official capacity; and JOHN DOE OFFICERS**
**#1-5 in their official and individual capacities**                    **DEFENDANTS**

---

**MEMORANDUM OF DEFENDANT CUEVAS IN OPPOSITION TO THE**
**PLAINTIFF'S MOTION TO EXCLUDE AND/OR STRIKE OPINIONS AND**
**TESTIMONY OF HOWARD J. RYAN, JR. AND JAMES P. MOLINARO**

---

COMES NOW the Defendant, Jason Cuevas, in his individual capacity, by and through

his counsel of record, and files this Memorandum in Opposition to the Plaintiff's Motion to

Exclude and/or Strike the Opinions and Testimony of his designated experts, Howard J. Ryan, Jr.

and James P. Molinaro [Doc. 138], and would show unto the Court that the Plaintiff's Motion

should be denied as follows:

## I. <u>INTRODUCTION</u>

This matter is before the Court on the Plaintiff's Motion to Exclude or Strike Experts

Howard J. Ryan, Jr. and James P. Molinaro.[1] [Doc. 138].  The underlying circumstances involve

an incident which occurred on February 1, 2020 involving Officer Cuevas with the Gulfport

Police Department and Leonard Parker, Jr.   The Court allowed limited discovery on the issue of

qualified immunity.  Pursuant to a July 13, 2023 Text Order of the Court, Defendant Cuevas

---

[1]  Officer Cuevas separately filed a Motion to Strike the Plaintiff's Motion as untimely. [Doc. 142].

**MEMORANDUM IN OPPOSITION TO MOTION TO EXCLUDE AND/OR STRIKE**

timely designated his expert witnesses on the issue of qualified immunity on August 15, 2023. This Designation included the designation of Howard J. Ryan, Jr. and James P. Molinaro, both with Highlands Forensic Investigations & Consulting, LLC, who both signed off on a written report in accordance with Rule 26 of the Federal Rules of Civil Procedure.[2] [Doc. 138-1, Report; Doc. 138-2 CV of Ryan; Doc. 138-3, CV of Molinaro].  Molinaro and Ryan were designated in the field of shooting incident and/or crime scene reconstruction.  They are not only qualified in their designated field, as admitted by the Plaintiff,[3] but their proposed opinions are also based upon their crime sene review, analysis of and reconstruction of the scene, are relevant to the Court's qualified immunity analysis and are reliable.  As such, this Court should deny the Plaintiff's Motion.

## II. <u>ARGUMENT</u>

By the Plaintiff's present Motion, the Plaintiffs appear to ask the Court to exclude the proposed testimony of defense experts,  Molinaro and/or Ryan, on the grounds that their

---

[2]  Because Mr. Molinaro and Mr. Ryan  maintain busy schedules, both are designated, but only one will testify at any trial of this matter based on their respective availability.

[3]  While the Plaintiff admits that both Molinaro and Ryan are qualified, that did not stop the Plaintiff from making derogatory remarks regarding their "education" and that they are only "presumably qualified" based on their experience in "law enforcement".  The Court will note for itself that based on the "Statement of Qualifications" made in their Report, as well as the curriculum vitae of Ryan and Molinaro, they are highly qualified to testify as to the issues in this case.  Currently, both teach crime scene investigation and shooting reconstruction for the University of Tennessee, National Forensic Academy, and privately for the New Jersey Crime Scene Investigators Association, Ohio Peace Officers Academy, CSI Academy of Florida, and Forensic Training Source, LLC.  Even though the Plaintiff admits to the qualifications of these experts, the Plaintiff further attempts to disparage Ryan and Molinaro because they don't provide the specific places and dates of the training they received in their respective curriculum vitae.  Had the Plaintiff had any doubts about their training and experience, they were certainly welcome to depose Molinaro and Ryan, but she and/or her counsel chose not to do so.  The fact of the matter is that the Plaintiff cannot and does not dispute their expertise in the field of ballistics and crime scene reconstruction but make remarks that are unprofessional and discourteous to say the least.

proposed testimony is unreliable and unhelpful to a jury and should be excluded from both trial[4]

and from consideration on summary judgment. [Doc. 139, p. 3]. The Plaintiff's Motion fails for

the following reasons.

Whether to admit or exclude evidence, including expert testimony, is within the

discretion of the trial court. Gen. Elec. Co. v. Joiner, 522 U.S. 136, 141-43 (1997). "If . . .

technical, or other specialized knowledge will assist the trier of fact to understand the evidence or

to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience,

training, or education, may testify thereto in the form of an opinion or otherwise . . . ." Fed. R.

Evid. 702. The Court must determine whether (1) the expert is qualified by special knowledge,

(2) his opinion is relevant, and (3) has a reliable basis. Daubert v. Merrell Dow Pharm., Inc., 509

U.S. 579, 589 (1993); see also, Octave v. Beau Rivage Resorts, Inc., 2011 U.S. Dist. Lexis 29518

*2 (S.D. Miss. 2011).

With regard to the relevancy determination, the expert testimony must "'assist the trier of

fact to understand the evidence or determine a fact in issue.' 'Expert testimony which does not

relate to any issue in the case is not relevant and, ergo, non helpful'." Cole's Tool Works v.

American Power Conversion Corp., 2009 U.S. Dist. Lexis 45677 *3 (N.D. Miss. 2009) (quoting

Daubert, 509 U.S. at 591). Thus, an expert's testimony "is relevant where there is a sufficient

relationship between the subject of the proffered testimony and the facts of the case, so that the

testimony aids the factfinder in resolving a disputed issue." Id.

---

[4] Currently before the Court is the Motion of Officer Cuevas for Summary Judgment on the Issue of Qualified Immunity. In support of this Motion, Officer Cuevas attached affidavit testimony of Molinaro and Ryan in which they authenticate their previously produced report detailing their Crime Scene Review, Analysis and Reconstruction. Should this Court deny this dispositive motion, then this case will proceed to full discovery, including expert designation. As such, the Plaintiff's Motion is premature and should this Court have any concerns regarding the proposed testimony of Molinaro and Ryan, then the Court should conduct a *Daubert* hearing at the time of trial.

**MEMORANDUM IN OPPOSITION TO MOTION TO EXCLUDE AND/OR STRIKE**

To determine reliability, this "requires consideration of whether the proposed testimony is 'supported by appropriate validation – i.e., 'good grounds' based on what is known'." Cole's Tool Works, 2009 U.S. Dist. Lexis 45677 at *3 (quoting Daubert, 509 U.S. at 590). The objective of the Court is to "ensure that 'an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field'." Id. at *4 (quoting Seatrax, Inc. v. Sonbeck Int'l, Inc., 200 F.3d 358, 371 (5th Cir. 2000)). In evaluating an expert's reliability, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." Shoemake, 2008 U.S. Dist. Lexis 9244 at *5 (quoting Daubert, 509 U.S. at 595). The Supreme Court has admonished the trial courts "to wield discretion with an element of caution: 'Vigorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence'." Cole's Tool Works, 2009 U.S. Dist. Lexis 45677 at *4-5 (quoting Daubert, 509 U.S. at 595).

A.    **Methodology of the Highlands, Generally.**

The Plaintiff first complains of the methodology set forth by Molinaro / Ryan [hereinafter "Highlands"], complaining that it is "vague generalities". The very first section of the Highlands report is entitled "Methodology" and it sets forth the general overview for performing a crime scene reconstruction. Highlands set forth in their Report that specifically reviewed and analyzed a "slew" of materials that were produced during this matter (as set forth on page 3 of the Report), including all of the documentation regarding the physical evidence collected from the scene, vehicle, Officer Cuevas and Leonard Parker, all as recovered by the Biloxi Police Department Crime Scene Investigation Unit. This included reviewing and analyzing photographs of the

scene and at the Biloxi CSU garage, scans, and reports which documented and/or depicted the physical evidence, the critical aspects of the scene, any components thereof, and injuries the injuries to Leonard Parker, Jr., as detailed by the medical examiner. From their analysis, Highlands used "deductive and inductive reasoning", the physical evidence, the "scientific method", as well as the interrelationships of all of these, in addition to their training, to "evaluate, sequence", and "determine how an event or series of events have occurred". Within each subsection of their Report, Highlands describe what physical evidence they reviewed, the significance of their findings, and what the findings meant in regard to the sequence of events.

The Plaintiff goes on to nitpick that Highlands did not provide a methodology for each and every opinion. That is not what is required by the Rules of Evidence and/or Rule of Discovery. Highlands set forth their methodology of how they reviewed and analyzed the physical evidence that was obtained by the investigators and thereafter reported upon in the Biloxi Police Department CSU records to perform a scene reconstruction. When the Court goes on to review the arguments of the Plaintiff relating to opinions of bullet trajectory and shell casing location, the Plaintiff appears to complain that the Highlands' opinions are unreliable because they did not conduct their own independent testing of either Parker's truck or the service weapon used by Cuevas. First, the Plaintiff apparently disposed of Parker's truck for salvage before any expert could independently evaluate this physical evidence. This was solely due to the fault of the Plaintiff and no one else. The Plaintiff cannot now complain that the defense experts did not independently evaluate this evidence when the truck is nowhere to be found due to her own actions. The Plaintiff would not make herself available for deposition so that Officer Cuevas could question her regarding whether she intentionally destroyed this physical evidence

**MEMORANDUM IN OPPOSITION TO MOTION TO EXCLUDE AND/OR STRIKE**

for the purpose of depriving his experts from examining the bullet holes and physical

characteristics of the truck so that the exact location of Officer Cuevas at the time of the shooting

could be further refined.  The Plaintiff's actions have prevented defense experts from

determining this specific information with exactitude and she cannot now complain that

Highlands would be unable to provide certain information pertaining to the bullet holes and other

physical information of the truck.  Regardless, Highlands can testify and explain the physical

evidence gathered at the scene by Biloxi Police Department CSU, as recorded in their records,

including the methods those investigators used in analyzing the evidence.  In other words,

Highlands is offering their opinions as to where Officer Cuevas was located when he fired his

service weapon at Parker's truck and whether Parker's truck was moving at the time the shots

were fired, based on their training and experience in the field of crime scene investigations and

firearms, as well as on their review of the available documentation of the physical evidence and

statements taken.  It is entirely proper to base these opinions on the evaluation of the physical

evidence gathered on scene by persons other than Highlands.  Gonzalez-Perez v. Gomez-Aguila,

296 F. Supp. 2d 110, 116 (D.P.R. 2003).  "Any flaws in [Highland's] otherwise reliable

methodology go to the weight and credibility of the evidence and not to its admissibility . . . The

adversary process provides mechanisms to address any such flaws."  Id. (citing United States v.

Shea, 211 F.3d 658, 668 (1st Cir. 2000) and United States v. Mooney, 315 F.3d 54, 63 (1st Cir.

2002)).  See also, United States v. Reep, 2022 U.S. Dist. Lexis 100298 * 8-9 (S.D. Miss. 2022)

(The credibility and weakness of a methodology may be attached at trial); EEOC v. Wesley

Health Sys., LLC, 2018 U.S. Dist. Lexis 196451 (S.D. Miss. 2018) (District Court found that the

expert had a simple methodology and had some information to support his opinions, all of which could be attacked at trial).

**B.    The Importance and Reliability of the Bullet Trajectory Opinions.**

The Plaintiff next complains of various aspects of Highlands' opinions relating to the bullet trajectories and the location of Officer Cuevas.  The Plaintiff, instead of actually quoting Highlands, states that Highlands "attempts to match defects in Mr. Parker's vehicle's hood and windshield to bullet trajectories and Mr. Parker's injuries" and "then determine that Defendant Cuevas was standing ***somewhere*** in front of the [sic] Mr. Parker's truck when he fired."  The Plaintiff refers to bullet points 2 through 4 of the General Summary section of Highlands' Report.  The Court can read the full detailed Report of Highlands, wherein they explain that they utilize photographs from the scene, photographs from the Biloxi CSU garage, including photographs wherein flight path rods were used by Investigator Teates, as well as measurements of the bullet defects from the hood and the windshield wiper, to analyze this physical evidence. The gunshot wounds of Parker from the autopsy photographs were also analyzed, as specifically described by the medical examiner.  At pages 18-22 of the Report, Highlands specifically discusses what this information means together, such that they reached certain opinions and conclusions.  In other words, Highlands analyzed what the physical evidence and scene and vehicle photographs revealed (4 shots striking the vehicle), that three bullets were recovered (one at the front passenger side interior door handle, one in the driver's seat headrest, and one at the vertebrae C4 associated with the left cheek wound of Parker), that the flight paths for the bullets were determined, and the significance of the location of three (3) fired cartridge cases.  All of this information gathered and analyzed led Highlands to conclude that there was a **"dynamic**

**shooting event"** whereby Officer Cuevas and the truck driven by Parker **were both moving**.  In other words, Highlands does not opine that "Cuevas was standing somewhere in front" of Parker's truck when he fired, as the Plaintiff's inaccurately state in their Brief.  Rather, as part of this **"dynamic shooting event"** whereby Officer Cuevas fired four shots, there was "forward movement of the GMC Sierra at Officer Cuevas while he was in a position at the front of the GMC Sierra" and that "the muzzle of Officer Cuevas' pistol" was "in a location and position consistent with the production of the flight paths" for the various bullet defects.

The Plaintiff seems to argue that a jury can just look at the individual photographs taken by the Biloxi CSU investigator and understand how the events unfolded.  Nothing can be further from the truth.  Clearly, this is a complex matter that is not "easily within the understanding of an ordinary layperson" as the Plaintiff smugly argues.  "Forensic ballistics and bullet trajectory analysis is highly technical area, subject to peer-reviewed research, and some degree of standardization.  Ballistics testimony requires specialized expertise."  Krause v. Cty. of Mohave, 459 F. Supp. 3d 1258, 1265-66 (D. Ariz. 2020).  In Footnote 5 of Krause, the district court stated that "[b]allistics experts draw on a range of publications to support their opinions" and then reference publications cited within case law.  Id. n. 5 (citing United States v. Astarita, 2018 U.S. Dist. Lexis 97347 (D. Ore. 2018) (citing Erwin J.A.T. Mattijssen, & Wim Kerkhoff, *Bullet trajectory reconstruction – Methods, Accuracy and Precision*, 262 Forensic Science Int'l 2014 (2016); United States v. Fultz, 18 F. Supp. 3d 748, 757-759 (citing Dean H. Garrison, Jr., *Practical Shooting Scene Investigation: The Investigation and Reconstruction of Crime Scenes Involving Gunfire* 60 (2003) and Michael G. Haag & Lucien C. Haag, *Shooting Incident Reconstruction* 262 (2.ed. 2011)).  The district court further cited to several cases, including

United States v. Scheffer, 523 U.S. 303, 313 (1998), wherein the Supreme Court noted that ballistics analysis is squarely within the province of expert testimony and not a layperson's knowledge.  Id. at 1266.  It is absolutely absurd to think that a jury could review crime scene photographs, including photographs of bullet defects, flight path rods, and the location of a cluster of shell casings, and understand the significance of the physical evidence.  Indeed, as the district court in Krause stated, if a layperson's knowledge "was sufficient, there would be no need for the existence of forensic ballistic science at all."  459 F. Supp. 3d at 1266 n.6.  The Plaintiff's argument that the opinions of Highlands on the movement of both Officer Cuevas and Parker's truck and the location of Officer Cuevas at the time the shots were fired will be unhelpful to a jury is not valid and should be denied.

The Plaintiff next states that she "does not contend that Cuevas shot through the windshield while standing behind or to the side of the vehicle."  Interestingly, at all times during the limited discovery period on qualified immunity, including during the taking of witness depositions, at the time of the filing of the Designation of Experts, and at the time of the filing of the Motion for Summary Judgment, the Plaintiff alleged and took the position that Officer Cuevas was "**standing to the side of**" Parker's truck and that he was not standing in the truck's path.  [Doc. 30, ¶¶ 29 - 30].  During deposition after deposition after deposition of numerous alleged fact witnesses, defense counsel heard over and over that Officer Cuevas was located at various positions, none of which included the front of the truck.  At no time did the Plaintiff or her counsel ever agree that Officer Cuevas was at the front of the truck at the time the shots were fired.  Therefore, Highlands was hired, in part, to determine, based on the physical evidence, whether Officer Cuevas was at the front of the truck at the time shots were fired or elsewhere.

This expert testimony is important, relevant, and helpful, especially to refute the numerous fact witnesses who apparently have made a concerted effort to dispute Officer Cuevas' location at the time the shots were fired.

The Plaintiff also attempts to assert that the "material questions" in this case are whether the truck was moving and if so, how fast it was traveling, the direction of travel, and how far away Officer Cuevas from the truck at the time the shots were fired. First, the actual "material question" in the qualified immunity analysis is whether Cuevas could reasonably believe that he was genuinely in imminent danger when he fired his service weapon at Parker's truck. Harmon v. City of Arlington, 16 F.4th 1159, 1164 n.3 (5th Cir. 2021). The "reasonableness" of this "particular use of force **must be judged from the perspective of a reasonable officer** on the scene, **rather than with the 20/20 vision of hindsight**." Sims v. City of Moss Point, 2022 U.S. Dist. Lexis 50655 *9 (S.D. Miss. 2022) (quoting Graham, 490 U.S. at 396). While a dispute does exist in the present case as to whether the truck driven by Parker **was moving** in the direction of Cuevas at the time the shots were fired, the **real issue** is whether Cuevas **perceived** the truck to be moving at him, especially given the fact that the truck had indeed moved from point A to point B after shots were fired. The expert testimony of Highlands will indeed be helpful on these issues as can be seen from their Report and as discussed above. That is, this was a **"dynamic shooting event"** whereby Highlands will discuss four different elements and how they are interrelated, including the position and movement of the GMC Sierra relative to the position of Officer Cuevas, the position and movement of Officer Cuevas relative to the position of the GMC Sierra, the shots fired by Officer Cuevas at the GMC Sierra, and the movement of the GMC Sierra at Officer Cuevas as a function of speed and distance. Highlands explains how each

**MEMORANDUM IN OPPOSITION TO MOTION TO EXCLUDE AND/OR STRIKE**

of these four events occurred individually, but also in relation to each other, such that each of the events unfolded rapidly and show that the truck driven by Parker and Officer Cuevas were moving at the time the shots were fired. Not only do the Plaintiff's arguments not match up with the actual opinions espoused by Highlands contained in their Report, she also, confusingly, does not appear to dispute these opinions. And, because she does not dispute bullet points 2 through 4, the Plaintiff seems to argue that these bullet points will not be helpful. What the Plaintiff does not appear to grasp is that all of the findings of Highlands, including those described in bullet points 2 through 4 form an integral part of a thorough analysis of the physical evidence and will help this Court and the trier of fact to understand how all of the events unfolded. The findings in bullet points 2 through 4 complete the bigger picture and should be reported as part of a thorough and complete reconstruction and should not be stricken simply because the Plaintiff has now decided that she does not dispute certain facts.

The Plaintiff next argues under the "Bullet Trajectory opinions" section that Appendices A and B to the Highlands Report are not helpful and lack methodology. The Plaintiff's arguments are confusing and are all over the place, to say the least. First, the Plaintiff argues that the graphics in the Appendices appears to be a GMC Denali truck as opposed to a GMC Sierra truck and that it is not a "good exemplar" because Highlands does not discuss if the hood height and windshield angles of a Denali are the same as a Sierra. To be sure, the graphic seen in the Appendices is a GMC Sierra truck. If the Plaintiff is referencing the faint word of what appears to be "Denali" on the side of the truck, then it is widely available on the internet that "Denali" is nothing more than a "trim package" for a GMC Sierra truck. The Plaintiff's argument is specious at best.

**MEMORANDUM IN OPPOSITION TO MOTION TO EXCLUDE AND/OR STRIKE**

The Plaintiff next argues that because the graphic in the Appendices only show the bullet trajectory that created Defect D-1 and D-1a, said graphic is not helpful because Highlands did not show a similar graphic for Defects D-2 through D-4 (the defects seen in the windshield of the truck).  First, the Appendices are for illustrative purposes only and give this Court and the trier of fact a perspective as to the inbound trajectory for the bullet which produced Defect D-1.  And, as thoroughly explained in the Highlands Report, these experts had to rely on the measurements taken by the Biloxi CSU investigator.  Defect D-1 (and D-1a) was the only defect for which the Biloxi CSU investigator provided an angle of impact, and as such the only defect for which a graphic illustration could be produced and included in this part of Highlands' Report.  Although the Biloxi CSU investigator placed flight path rods into the Defects in the windshield, he did not obtain any angles of impact for these three defects.  Had the Parker truck been preserved for evidentiary purposes rather than disposed of by the Plaintiff, a request could have been made to examine the truck and determine the angles of impact for Defects D-2, D-3, and D-4, such that additional graphics representing this information could have been prepared.  Once again, Highlands was unable to do so because the Plaintiff is the one who allowed the truck to be salvaged and it is no where to be found.

Then, showing her complete lack of understanding of this particular field of expertise, the Plaintiff goes on to argue that "it is reasonable to assume" that Highlands could have provided a "generalized introduction of the distance between Defendant Cuevas and the Sierra" when Defect D-1 was shot because the 6 degree downward angle was known and they could have used the general height of someone of Cuevas' stature.  The Plaintiff argues that because Highlands does not provide information about Cuevas' height, whether he is right or left handed, or his shooting

**MEMORANDUM IN OPPOSITION TO MOTION TO EXCLUDE AND/OR STRIKE**

stance, a 6 degree downward trajectory angle provides nothing for the trier of fact to consider. (Doc. 139, pp. 7-8). Once again, the Plaintiff is wrong as the extension of the angles of impact back into the environment to an approximate shooter location relative to the truck is actually dependent upon several items of information, including the specifications of the truck in question and the exact location and position of the four defects. Even if Highlands could determine certain truck measurements that would be available from manufacturer schematics, the Biloxi CSU investigators did not provide information as to the exact location of the four defects in the reports. The angle of impact, the initial impact location and position, and the height of the defect relative to the vehicle are critical to the process of flight path extension back out into the environment. Without this information, a determination as to the approximate location or range of location for the muzzle of the firearm would be speculative. Only if the Biloxi CSU investigators provided this complete information in their repots would Cuevas' height and the potential height of the muzzle at the time he fired would contribute to a determination of a range of fire and any kind of muzzle to target distance. Thus, the Plaintiff's argument that Highlands should have provided additional opinions to be reliable must fail in light of the fact that the information to provide said calculations was not provided by the Biloxi CSU investigators, which would mean that Highlands would have to speculate. Once again, had the vehicle been retained by the Plaintiff, this critical information could have been obtained and an approximate range of muzzle to target could possibly have been established for each of the fired shots. The vehicle not being retained is due to the fault of the Plaintiff and this Defendant and his expert witnesses should not be punished for her conduct.

**MEMORANDUM IN OPPOSITION TO MOTION TO EXCLUDE AND/OR STRIKE**

The Plaintiff's continued arguments seen on page 8 of her Brief relating to a layperson can tell that Cuevas was at the front of the vehicle such that Highlands' report and proposed testimony is not helpful are farcical and have been addressed.  Once again, bullet trajectories and crime scene reconstruction are matters for experts to explain to the jury.  These arguments have been rejected and it has already been fully explained that forensic ballistics and bullet trajectory analysis is a highly technical area, subject to peer reviewed research, and some degree of standardization.  See e.g., Krause v. Cty. of Mohave, 459 F. Supp. 3d 1258, 1265-66, n. 5 and 6 (D. Ariz. 2020); see also, Nash-Perry v. City of Bakersfield, 2022 U.S. Dist. Lexis 145507 *29-30 (E.D. Cal. 2022) (Bullet trajectories are within the province of experts rather than laypersons).  The Plaintiff's "complaints" about the Highlands' Report would require these expert witnesses to guess as to information and data that the Biloxi CSU investigators failed to obtain and would require the experts to provide unsupported opinion and speculation for inclusion into an objective report.  That, Highlands will not do.  The Plaintiff's arguments show an absolute lack of understanding of this area of expertise.

Next under the Subsection of "Bullet Trajectory opinions", the Plaintiff argues that bullet points 7 through 9 located in the "General Summary" section of the Highlands report should be excluded because Highlands did not provide a methodology.  Once again, the Plaintiff fails to place the entirety of the Highlands report in the picture.  Bullet points 7 through 9 are a summary of the opinions from within the body of the report.   These bullet points relate to the bullet trajectories of Defects D-2 through D-4.  At page 18 of the Highlands report, Molinaro and Ryan state that they reviewed the scene and vehicle photographs depicting the bullet defects to the GMC Sierra and the three bullets that were recovered, both from inside the truck and from the

body of Mr. Parker during autopsy.  At page 19 of the Highlands report, Molinaro and Ryan examined the photographs, the physical evidence, the flight paths for the bullets, and the gunshot wounds of Parker.  From a review of this combined evidence, and based on their training and experience in crime scene reconstruction, Highlands was able to determine the directionality of the bullets, whether any of the bullets caused an injury to Parker, and where the bullets were recovered.

Again, associating bullet impacts and resultant bullet flight paths with gunshot wounds and resultant wound tracks is another process that is considered in a crime scene reconstruction. Highlands showed that three bullets perforated the front windshield of the Parker truck and all three of these bullets were recovered within a defined terminus for each shot – one in the passenger side front interior door handle, one in the driver's seat headrest, and one in the head of Parker.  The findings related to which bullet was associated with which gunshot wound was defined for each of these three shots.  For Defect D-2, its location, position and flight path (from the flight path rods) aligned with Parker's left hand, produced a graze wound, which then deflected the bullet flight path towards the passenger side front door handle.  The bullets which produced Defects D-3 and D-4 presented two possibilities for their respective resultant terminus. Each of these bullets either produced the gunshot wound to Parker's head or produced the penetrating defect to the driver's seat headrest.  Because neither could be definitively ruled in or ruled out, both possibilities were presented as part of the reconstruction report to present these findings in an objective manner.

The bullet trajectory analysis by Highlands was then combined with additional information related to the location of the expended cartridge casings such that Highlands was

able to determine the location of Officer Cuevas and what occurred in this "dynamic shooting

event". In other words, the trajectory of the bullets and resulting wounds to Parker were pieces

of information that, combined with other pieces of information, helped determine the bigger

picture of this interrelated event, all as explained on pages p. 21 and 22 of the Report. Not only

that, Highlands explained their methodology at the beginning of the Report on p. 2 of how they

determined each event or series of events that occurred on February 1, 2020.

As can be seen, the Plaintiff's assertion that Highland provided its conclusions without

any explanation of how they reached them or the methodology they used is simply not true.

Beyond their training and experience, the Highlands Report adequately sets forth what

information was reviewed and relied upon in formulating their opinions. Each and every step in

their analyses was fully set out by Highlands. The Plaintiff's complaints go more to the bases

and sources of Highlands' opinions. "[T]he Fifth Circuit has emphasized that '[a]s a general

rule, questions relating to the bases and sources of an expert's opinion affect the weight to be

assigned that opinion rather than its admissibility and should be left for the jury's

consideration.'" United States v. Reep, 2022 U.S. Dist. Lexis 100296 *6 (S.D. Miss. 2022)

(quoting Viterbo v. Dow Chemical Co., 826 F.2d 420, 422 (5th Cir. 1987)) and (citing Julius v.

Luxury Inn & Suites, LLC, 535 F. Supp. 3d 600, 605 (S.D. Miss. 2021) (explaining that much of

defendant's arguments challenging the expert's testimony "resembles arguments appropriate for

cross-examination, where it belongs so that the jury can play its proper role in the adversarial

system")). As in Reep, the Plaintiff is welcome to attack the credibility of Highlands and any

alleged weaknesses of their methodology at any trial of this matter. See also, EEOC v. Wesley

Health Sys., LLC, 2018 U.S. Dist. Lexis 196451 *7-9 (S.D. Miss. 2018) (District Court held that

even if the expert did not gather sufficient information, he had some information and a simple methodology, which was enough to satisfy Rule 702 and could be attacked at trial).

Arguments similar to those of the Plaintiff were rejected by the district court in White v. Gerardot, 2008 U.S. Dist. Lexis 70235 (N.D. Ind. 2008). The defendant officer (Gerardot) asked the district court to exclude the proffered expert testimony of Balash, the plaintiff's (White) firearms examiner and forensic science consultant. The officer testified in his deposition that he never moved from his position during the shooting in question. Balash, however, opined that based on the ejection pattern of shell casings from the officer's service weapon, he did move as one of the casings was found in a different location from the others. The officer argued that this opinion was based on speculation and further, a jury does not need expert testimony to assist them in deciding whether a shell casing was moved since they can simply look at the same photographs on which Balash based his opinion and arrive at their own conclusion through common sense. Id. at **11-12. The district court rejected the officer's argument, finding that his arguments go more toward the weight of Balash's testimony, not its admissibility. Id. at **12-13. The district court pointed out that Balash's knowledge and experience in the field of ballistics and crime scene investigation qualified him to opine about the position of the one shell casing and that his testimony was based upon sufficient facts or data; i.e., the photographs of the crime scene and his examination of the cartridge, test firing of Gerardot's weapon and his analysis of the ejection pattern. Id. at *13.[5]

---

[5] Any argument that Highlands did not test fire Cuevas' weapon is not relevant here since his service weapon is not available to Highlands to test fire. It remains in possession of Biloxi CSU.

The Plaintiff even cites to case law that does not support her arguments. For instance, in Walker v. Target Corp., 2017 U.S. Dist. Lexis 91325 (S.D. Miss. 2017), the expert witness did not include either his supporting data or his methodology in his report. Id. at **5-8. As noted by the district court, the expert's report represented that it would include the facts or data that he considered in forming his opinion, but when the court read the report, it could only find a few actual facts and his report was based on assumptions. Id. at **6-7. Because the expert's report was lacking in sufficient data, the district court found it to be unreliable. Id. at *8. In addition to missing facts, the expert did not include any explanation of his methodology or analysis at key points in his report. Id. at **8-9. The same cannot be said of the Highlands report wherein Ryan and Molinaro first set forth their methodology and then state the key data they reviewed and the information learned from this physical evidence.

Next, in Seymour v. Necaise, 2013 U.S. Dist. Lexis 32177 (S.D. Miss. 2018), the district court noted that the expert report offered no explanation as to how the police procedure expert reached certain conclusions; i.e., he did not identify any methodology. The same cannot be said in the present case as the methodology was clearly set forth on page 2 of the Highlands report and further, throughout the body of the report.

The Plaintiff cited to Estate of Baker v. Castro, 2018 U.S. Dist. Lexis 244583 (S.D. Tex. 2018). There, the plaintiff designated Weaver as an expert in accident scene reconstruction to evaluate the crime scene evidence, including evaluating the trajectory of the bullet and the decedent's injuries to come to conclusions relating to whether the decedent was moving in a direction opposite of the officer when the officer fired his weapon. Also as part of his opinions, Weaver attempted to plot his estimated locations of the bullet casing. While Weaver had the

**MEMORANDUM IN OPPOSITION TO MOTION TO EXCLUDE AND/OR STRIKE**

education, training and experience in the field of accident reconstruction, he had absolutely no education, training or experience in the field of crime scene reconstruction, guns, bullet wounds, blood spatter, bullet trajectories, or fired cartridge ejection patters.  Therefore, the district court found that Weaver did not have the experience and expertise to qualify him to reconstruct the scene of a shooting.  Id. at **10-12.  Additionally, the district court found that because Weaver did not adequately show or explain how he determined certain aspects of his report, including the trajectory of the bullet, nor did he provide data in his scene reconstruction that was consistent with the physical evidence, his opinions were not reliable.  Id. at **12-14.  Again, in the present case, Highlands provided information regarding the specific physical evidence, what this physical evidence showed, and how this physical evidence all tied together so that they could formulate their reconstruction of events.

For all of the foregoing reasons, this Court should deny the Plaintiff's various requests to exclude the opinions of Highlands raised in her "Bullet Trajectory opinions" section of her Brief.

**C.    The Spent Cartridge Opinions are Helpful and Reliable.**

The focus of this portion of the Plaintiff's argument is on Bullet Point 10 from Highlands' General Summary, wherein Highlands opines that "the location of the three fired cartridge casings recovered at the scene directly to the front of the GMC Sierra are consistent with the forward movement of the vehicle during the shooting and/or immediately after the shooting before coming to a complete stop with the vehicle transmission in DRIVE at its final position".  The Plaintiff  complains that the basis of Highlands for this opinion relates to the "standard direction of ejection for a fired cartridge case from a semiautomatic pistol".  (Report, p. 21).  Specifically, the Plaintiff believes that the opinion of Highlands is unreliable, arguing that

Highlands should have examined or test-fired Cuevas' service weapon, should have test fired any Glock or other semiautomatic pistol as an exemplar, or should have had some data on the ejection pattern of Cuevas' weapon. The Plaintiff also argues that Highlands should have "addressed" whether the three fired cartridge cases were photographed where they initially hit the ground or if a condition could have altered the location of the cartridge, such as a cartridge landing on grass versus asphalt.

Once again, the Plaintiff fails to look at the bigger picture of the opinions of Highlands, attempting to extract one bit of information, instead of looking to see how that information fits with the entirety of the physical evidence from the scene in its totality. Here, Highlands noted the location of the three fired cartridge casings that were located, along with the final stopped location of the truck, as well as the truck still being in "DRIVE" while stopped, and the trajectories of the four bullets to form their conclusion that Parker's truck was moving forward during the shooting and/or immediately after the shooting before coming to a complete stop. In other words, the location of the three fired cartridge casings was but one piece of information that ties in with other pieces of information for Highlands to form their opinion.

Regardless, the Plaintiff's complain that Highlands did not examine and/or test fire Cuevas' service weapon is unreasonable as the Plaintiff knows that Cuevas' service weapon (Glock 17- 9mm handgun) is in the possession of the Biloxi Police Department CSU and therefore, Highlands has no means of test-firing Cuevas' service weapon. As such, Highlands must rely on the physical evidence gathered at the scene, the reports of the Biloxi CSU investigators, along with the "standard direction of ejection for a fired cartridge case from a semiautomatic pistol". The "standard direction of ejection" of the Glock is information known to

**MEMORANDUM IN OPPOSITION TO MOTION TO EXCLUDE AND/OR STRIKE**

Highlands based on their training and experience in crime scene investigation.  Biloxi CSU investigators collected the Glock, but they did not determine whether the weapon itself ejected the casing to the right or to the left of the weapon.  (DP Teates, p. 93, Exhibit "1").  Biloxi CSU Investigator Teates testified, though, that "[t]ypically [the Glock shell casings] would eject to the right of the weapon".  (Id., pp. 93, 96, 97).  Investigator Teates further stated that all the casings that he photographed were all located at the front of the vehicle.  (Id., p. 94).  Investigator Teates agreed that if the casings typically eject to the right, then the person using the weapon would "typically" be located to the left of the casings at the time the weapon is fired.  (Id.).  These opinions are essentially the same as stated by Highlands – no different.

Also similar, Investigator Teates testified that based on the flight path rods and his measurements, Defect D-1 (the bullet defect on the hood) had an approximate five degree angle to the vertical plane, such that Officer Cuevas would have been located somewhere within that five degree area to the front of the truck at the time he fired his weapon.  (DP Teates, pp. 95-96, 97, Exhibit "1").  Additionally, Investigator Teates testified that the casings were found to the left of Defect D-1.  (Id., pp. 95-96).  Investigator Teates then explained that because the truck was moving during the shooting, he could not say exactly where the truck and shooter were located at the precise time that the shots were fired.  (Id., p. 96).  This was because he lacked the specific crime scene reconstruction training.  (Id., pp. 97-101).  There was no testimony by Investigator Teates that the shell casings were ever previously moved or disturbed due to vehicle or foot traffic.

Here, the physical evidence collected at the scene demonstrates that Officer Cuevas was at the front of the truck at the time the shots were fired.  The physical evidence collected at the

**MEMORANDUM IN OPPOSITION TO MOTION TO EXCLUDE AND/OR STRIKE**

scene further demonstrates that the truck was moving at the time the shots were fired, based upon both the bullet trajectories and the location of the shell casings. This is because if the truck was not moving, then the bullet trajectories and the shell casing locations would have been different from what they were ultimately located. These opinions are helpful to the trier of fact and are reliable.

The case law cited by the Plaintiff do not support that the testimony of Highlands should be stricken. For instance, in <u>White v. Gerardot</u>, 2008 U.S. Dist. Lexis 70235 (N.D. Ind. 2008)[6], the defendant officer attempted to argue that the plaintiff's expert's testimony on whether the officer moved when he discharged his firearm based on the shell casing ejection pattern and the location of the shell casings at the scene was speculative. The district court rejected the officer's arguments, stating that the expert (Balash) is qualified to opine about the resting places of the fired cartridges. <u>Id</u>. at * 13-15. Even though Balash could not duplicate the exact conditions of the night of the shooting and did not precisely know where the officer was standing or the angle he was holding his gun, the district court stated that these types of arguments go more toward the weight of the expert's testimony as opposed to its admissibility. <u>Id</u>. at *15. The district court held that the expert's testimony was relevant toward determining the credibility of the officer's version of events (that he did not move while shooting) and the expert's opinion about the positions of the shell casings would help the jury understand this evidence. <u>Id</u>. at **15-16. Similarly, while Highlands cannot give an exact location of Officer Cuevas at the time of the

---

[6] The Plaintiff also cited to <u>Menjivar v. City of Los Angeles</u>, 2007 U.S. Dist. Lexis 95928 *22 - 26 (C.D. Cal. 2007) for support. However, the reason why the district court excluded the testimony of the expert, who proposed to offer opinions regarding the location of the bullet casings found at the scene, was because he had no education or experience in the field of firearms or firearms analysis. <u>Id</u>. at n. 54. Here, the Plaintiff does not dispute the qualifications of the Highlands experts and therefore, <u>Menjivar</u> is not helpful.

**MEMORANDUM IN OPPOSITION TO MOTION TO EXCLUDE AND/OR STRIKE**

shooting, other than at the front of the truck, their opinions will further help the trier of fact understand that this was a dynamic event, whereby, based on the bullet trajectories and the location of the shell casings, both the truck and Officer Cuevas were moving at the time he fired his weapon.

As to Haegele v. Judd, 2020 U.S. Dist. Lexis 218 456 **2-3 (M.D. Fla. 2020), the plaintiff's expert, Boswell, concluded that based on the location of the shell casings (alone), the deputies had shot at the decedent, who was stationary at the edge of a bush and had not emerged from this location. The expert opined that based on the ejection pattern of the casings, the deputy was advancing towards the decedent as he shot into the bush. The Haegele expert was dealing with an individual only – one individual supposedly advancing on another. Unlike the present case, there was no vehicle involved and therefore no bullet trajectory information to consider in addition to the shell casing location. Only the shell casing location was utilized and the expert did not make a determination of the distance the shell casings typically eject from the weapons. In other words, this specific information was needed to determine whether the deputy advanced towards the decedent when he shot the weapon. For this reason, the district court found that the shell casings and the supposed meaning of their placement is unreliable. The issues raised in the present case are not similar. Here, Highlands is not using the location of the shell casing location to state the precise location of Officer Cuevas at the time of the shooting. Rather, Highlands is utilizing the shell casing location, in combination with the bullet defect trajectories along with the standard ejection of the shell casings from a Glock (to the right), to opine that the Parker truck and Officer Cuevas were moving at the time the shots were fired. That issue was not addressed in Haegele and therefore, that case is irrelevant for purposes of the Court's analysis.

The case of <u>United States v. Fultz</u>, 18 F. Supp. 3d 748 (E.D. Va. 2014) fails for similar

reasons. There, an expert was attempting to rely on casing ejection patterns to pinpoint the

location of a shooter, but because cars drove the crime scene before the crime scene technician

surveyed the scene, the district court stated there was insufficient information to determine

whether the location of casings was where they were initially ejected. In the present case, there is

no evidence to suggest that the locations of the shell casings were in any way disrupted by

individuals at the scene. There is no such evidence in any of the records and the Plaintiff has not

cited to any such evidence. Also distinguishing is that in the <u>Fultz</u> case, the shell casings were

not in a narrow distribution pattern as they are in this case. In <u>Fultz</u>, two casings were on the

passenger side of the car and one casing was on the driver's side of the car and the standard

ejection pattern of the weapon did not explain these scene findings. In the present case, all three

shell casings recovered were in a "relatively concise distribution pattern" at the front of Parker's

truck (one nearly underneath the vehicle). Also unlike the present case, bullet trajectories were

not utilized in <u>Fultz</u>. In other words, in <u>Fultz</u>, the expert was attempting to determine the origin

of the shot based solely on the shell casing location. The district court "found literature

supporting the proposition that case ejections, when combined with bullet trajectory projections,

can allow one to determine 'the place from where the shots were fired ... with a high degree of

probability.'" 18 F. Supp. 3d at 757 n. 14 (quoting George Schiro, <u>Shooting Reconstruction –

When the Bullet Hits the Bone</u>, S. Lawman Mag. (Fall, 1998), available at

http://www.forensicscienceresources.com/Shooting.htm (last visited March 31, 2014) and (citing

Robert R. Ogle, Jr., <u>Crime Scene Investigation & Reconstruction</u> 393 (3d ed. 2012) ("Data from

the location of the expended cartridge cases, coupled with the data from trajectory analysis and

the identification of the weapon that fired each bullet, will provide much of the information needed for reconstruction of the incident."). The district court reiterated that the expert's report did not mention performing any trajectory analysis. The same cannot be said in the present case.

The arguments of the Plaintiff were rejected by the district court in Fancher v. Barrientos, 2015 U.S. Dist. Lexis 114460 (D.N.M. 2015). In Fancher, the decedent attacked the deputy and then attempted to steal his police cruiser. The deputy shot seven bullets at the decedent. The district court had previously held that the deputy was justified in firing the first shot, but there was a question remaining as to whether the additional six shots were justified. The plaintiff hired a ballistics and reconstruction expert to opine that there was an equal chance that the fatal gunshot wound was caused by any of the shots. The expert contended that the shell casings have some meaningful inferences that could be drawn from their location as to the movement of the deputy during the shooting such that he could have been very close to the decedent when the last two shots were fired. The defendant officer argued that the conclusions of the expert were based on an unreliable methodology because they asserted that even in a controlled environment, the location of a shell casing cannot reliably determine the location of the shooter. The expert assumed that the spent cartridges fell behind the shooter and to the right. The defendant deputy cited to William J. Lewinski et al., *Fired Cartridge Case Ejection Patters from Semi-Automatic Firearms*, 2 Investigative Sciences J. 3 (Nov. 2010) in their motion to refute the expert's opinions. Id. at *17. In that study, the authors found that in total, 73.6% of the cartridge casings "fell in the 90-degree section to the right and rear of the shooter." Id. at *18. Also in the study, if one were to focus on specific grips, motions, or weapon types, more volatile results were produced. Id. Thus, the defendant deputy argued that this study impugns the reliability of

**MEMORANDUM IN OPPOSITION TO MOTION TO EXCLUDE AND/OR STRIKE**

forensic reconstruction as a method for determining where the deputy stood when he fired the fatal shot. The defendant deputy further argued that the expert did not test the cartridge casings locations before making his determination about the fatal wound, undermining his reliability. Id. The district court rejected these arguments.

Rather, the district court found the study indicates that under all of the Kumho factors, the expert's conclusions were based on a reliable method. First, the district court found that the study itself tested forensic reconstruction of shooter locations based on cartridge locations, such that the theory of the expert can and has been tested. Also, according to the study, a spent casing's location can be used to infer the shooter's position, of average, at least 70% of the time. The study also showed that the theory is subjected to peer review and publication as it evaluates the underlying assumptions of forensic reconstruction and publishes the results. The study also furnished a known rate of error – roughly 30%. The study also imposed standards and controls and eliminated sources of inaccuracy such as terrain, wind, and grip style. Finally, the study acknowledged that extrapolating shooter location from spent cartridge locations is widely accepted among forensic reconstruction experts. Id. at ** 18-20. Last, the district court responded to the defendant deputy's argument regarding the distance a cartridge travels from the firearm can make it difficult to determine with certainty where a shooter stood based only on the location of the spent cartridge. The district court rejected this argument, noting that the path of the car was undisputed, as was the location of the last two shells, supporting an opinion that the final two shell locations were not disturbed. Id. at **21-22. For these reasons, the district court found that any objections that the defendant deputy had as to the expert's methodology and reliability relate to the weight of the expert's testimony, not the admissibility.

**MEMORANDUM IN OPPOSITION TO MOTION TO EXCLUDE AND/OR STRIKE**

The studies cited within these various cases remain consistent today and they are attached as additional Exhibits to this Memorandum.  (Lewinski Study, Exhibit "2"; Schiro Article, Exhibit "3").  These studies show that the opinions and conclusions of Highlands are supported by the literature and are reliable.

It is clear that the Plaintiff questions the opinions of Highlands.  The Plaintiff, however, made a decision not to depose these experts about the facts and methodology that they relied upon in forming their opinions.  The report of Highlands is very specific as to these issues and the Plaintiff was certainly welcome to depose either Molinaro or Ryan if they had any questions.  Highlands set forth in detail how the location of the shell casings, including one being located practically underneath the front passenger side of the truck, together with the bullet trajectories, the final resting point of the Parker truck, and the truck being in DRIVE, suggest movement of the truck during or post shooting so as to reach a location just in front of the grouping of fired casings.  More importantly, the objections that the Plaintiff now raises as to the methodology and reliability go to the weight of the opinions of Highlands relating to the shell casing location, not the admissibility.  The Plaintiff's arguments must be denied.

**D.    Bullet Points 11 and 12 are Admissible.**

The last two bullet points under the General Summary are reflective of Highlands completing the reconstruction, making their findings, and then comparing it to the video interview and statement of Officer Cuevas to law enforcement and the statements of witnesses to the events of February 1, 2020, to determine the veracity and accuracy of those statements as compared to the reconstruction findings.  Bullet points 11 and 12 were only put forth after bullet point findings 1 through 10 were objectively established as part of the reconstruction process.

**MEMORANDUM IN OPPOSITION TO MOTION TO EXCLUDE AND/OR STRIKE**

This is appropriate and will help the trier of fact understand the findings of Highlands in comparison to the allegations of the parties. This Defendant has shown why all of the opinions contained in the Highlands report, including the findings found in bullet points 1 through 10, are not only helpful to the trier of fact, but also reliable. For these reasons, the Court should deny this final argument of the Plaintiff.

### III. CONCLUSION

The overwhelming majority of cases decided in this judicial district following Daubert and Kumho, applying the trial court's general "gatekeeping" role, have rejected attempts to exclude an opposing party's expert in situations such as this. Trial courts have instead relied upon cross-examination of the expert at trial by the opposing party rather than exclusion of the expert's testimony. Therefore, and for all the foregoing reasons, this Court should deny the Motion of the Plaintiff to Exclude and/or Strike the expert testimony of James P. Molinaro and Howard Ryan.

WHEREFORE, PREMISES CONSIDERED, the Defendant, Jason Cuevas, respectfully requests that the Court deny the Plaintiff's Motion and seeks any other or further relief to which he may be entitled.

Respectfully submitted, this the 13th day of November, 2023.

**JASON CUEVAS**

BY:   COPELAND, COOK, TAYLOR & BUSH, P.A.

BY:   /S/ WILLIAM E. WHITFIELD, III
Mississippi Bar No. 7161
/S/ KAARA L. LIND
Mississippi Bar No. 10604

## CERTIFICATE OF SERVICE

I hereby certify that on November 13, 2023, I electronically filed the foregoing with the

Clerk of the Court using the ECF system which sent notification of such filing to the following:

Charles R. Mullins, Esq.
Courtney Sanders, Esq.
Coxwell & Associates, PLLC
P.O. Box 1337
Jackson, MS 39215
chuckm@coxwelllaw.com
courtneys@coxwelllaw.com
and
Nicolette A. Ward, Esq.
Bhavani K. Raveendran, Esq.
Javier Rodriguez, Jr., Esq.
Samantha A. Harton, Esq.
Romanucci & Blandin, LLC
321 N. Clark St., Suite 900
Chicago, IL 60654
nward@smbtrials.com
braveendran@rblaw.net
jrodriguez@rblaw.net
sharton@rblaw.net
**Attorneys for Plaintiff**

Jeffrey S. Bruni, Esq.
P.O. Box 1780
Gulfport, MS 39502
jbruni@gulfport-ms.gov
**Attorney for Defendant,**
**City of Gulfport**

*/S/ WILLIAM E. WHITFIELD, III*
*/S/ KAARA L. LIND*

William E. Whitfield, III
Kaara L. Lind
COPELAND, COOK, TAYLOR & BUSH, P.A.
Centennial Plaza
200 East Beach Boulevard, Building #5
Gulfport, Mississippi 39507
P.O. Box 10
Gulfport, Mississippi  39502-0010
telephone (228) 863-6101
telecopier (228) 863-9526