IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **CATINA PARKER, as Personal Representative** of the Estate of Leonard Parker, Jr., Deceased | **PLAINTIFF** |
| **VERSUS** | **NO.1:21-cv-00217-HSO-BWR** |
| **The CITY OF GULFPORT, a municipal corporation; JASON CUEVAS, in his individual and official capacity** | **DEFENDANTS** |

**MEMORANDUM BRIEF IN SUPPORT OF THE RENEWED MOTION *IN LIMINE*
TO EXCLUDE TESTIMONY OF JOHN STAMM, P.E., PLAINTIFF'S EXPERT**

COMES NOW the Defendant, Jason Cuevas, by and through his counsel of record, and submits his Memorandum Brief in Support of his Renewed Motion *In Limine* and/or Motion to Exclude or Strike the Testimony (*Daubert* motion) of John Stamm, P.E., Plaintiff's Expert.

## I. INTRODUCTION

In her Third Amended Complaint, the Plaintiff has asserted a claim pursuant to 42 U.S.C. §1983, that on February 1, 2020, Jason Cuevas, who was employed as a police officer with the Gulfport Police Department, used unreasonable and excessive force against Leonard Parker, Jr. in violation of the United States Constitution. [Doc. 141]. Officer Cuevas has denied all allegations of any use of excessive force and has asserted that he is entitled to qualified immunity. [Doc. 146]. The parties have now completed discovery on all issues. During discovery on the issue of qualified immunity, the Plaintiff designated John Stamm, P.E. as an expert witness and submitted his Expert Report, which disclosed opinions he intends to offer at trial. (Doc. 100; Report of Stamm, Exhibit "A"). Stamm's deposition was taken on September

8, 2023. (DP Stamm, Exhibit "B"). At the conclusion of discovery on the issue of qualified immunity, Officer Cuevas filed a Motion In Limine to Exclude the Expert Testimony of Stamm. [Docs. 130, 131]. The Court entered an Order Denying Without Prejudice Defendant Jason Cuevas's Motion to Exclude the Testimony of John Stamm [Doc. 158]. In its Order, the Court stated that the issues presented in the Motion were unripe, but could be re-urged upon the conclusion of full discovery. [Id.]. During discovery, the Plaintiff again designated Stamm as an expert witness and used the same Report. [Doc. 183; Report of Stamm, Exhibit "A"]. Now that discovery has concluded, Officer Cuevas renews his arguments as before. That is, Officer Cuevas challenges the reliability and admissibility of Stamm's opinions as it relates to the issue of whether the 2014 GMC Sierra Truck being driven by Parker was moving in the direction of Office Cuevas, or could have been perceived to be moving, at the time of the officer involved shooting.

## II. CLAIMS ASSERTED BY THE PLAINTIFFS

The police shooting at issue in this case occurred during the early morning hours of February 1, 2020. As to the events leading up to the shooting, several individuals, including Leonard Parker, Jr., were attending a birthday party at the home of Stephanie Baldwin, who resided at 210 25th Street, Gulfport, MS. The party began during the early morning hours of Friday, January 31, 2020. By all accounts, alcohol was served and many of the guests were drinking, including Parker.[1] As the evening proceeded, one of the guests, Tremaine Markray, became disorderly and aggressive with several of the guests. One of the guests, Maxine Owens,

---

[1] A Toxicology Screen determined that Parker had a BAC of 0.185, over twice the level of intoxication in Mississippi. (Toxicology Report, Exhibit "C"; DP Dr. Turner, p. 55, Exhibit "D").

called 911 and asked for police assistance with the escalating situation. Officer Cuevas and another nearby officer were dispatched to this call.

Markray ultimately agreed to leave with Parker with the intent of going to a hotel to "sleep it off." Parker was driving his dark color 2014 GMC Sierra pick up truck and Markray sat in the front passenger seat. About this time, Officer Cuevas approached the area and parked his patrol vehicle on the north side of 25th Street, just west of its intersection with Oak Avenue, but east of a mailbox with the address of 208 25th Street. Officer Cuevas did not have his blue lights or siren activated when he arrived or when he parked his vehicle.[2]

Officer Cuevas exited the vehicle and then proceeded westbound on foot on 25th Street, searching for the address of the "drunk and disorderly" call by looking at the numbers on a mailbox located on the north side of the road. The street was dark and Officer Cuevas had to illuminate the mailbox with his flashlight in order to locate the address. While Officer Cuevas was proceeding on foot down 25th Street, he could hear a commotion ahead and noticed a truck backing out of what he thought was a driveway (according to the MBI records, the truck backed out of the front yard). Officer Cuevas witnessed the truck back into a mailbox located directly across the street (213 25th Street). He believed the truck was leaving from the residence that had reported the "drunk and disorderly" male. While still in the street, Officer Cuevas started walking towards the truck to make contact with the driver and, at the same time, he was shining his flashlight towards the truck to get the driver's attention.

---

[2] Officer Cuevas testified that this is to maintain a tactical advantage over an unknown encounter that involved an altercation or domestic dispute. (DP Cuevas, p. 42, Exhibit "E").

While Officer Cuevas was in the middle of the street, the truck pulled forward from the mailbox, straightened out and then began to proceed eastbound on 25th Street angling in his direction. Officer Cuevas activated the strobe on his flashlight and then removed his firearm from the holster and utilized the weapon light, all in an effort to get the driver's attention. Officer Cuevas also identified himself as **police** and gave several commands for the driver to **stop the vehicle**. Officer Cuevas specifically recalls yelling: "Stop the vehicle! Stop the vehicle! Police! Stop the vehicle!" The truck continued to drive towards Officer Cuevas as the headlights became brighter as he heard the engine rev up and pick up speed in his direction.

Officer Cuevas then tried to back peddle out away from the middle of the road, moving towards the south side of the road. He states that the headlights of the truck followed him towards the south side of the road and he felt that the truck constituted an imminent threat of harm or death to himself such that he recalls firing three consecutive shots in quick succession from his service weapon toward the driver of the truck which immediately came to a stop.

In the Third Amended Complaint, the Plaintiffs allege that at the time Officer Cuevas fired his weapon, that Parker "had brought the truck to a full stop". [Doc. 141, ¶¶ 52, 54]. The Plaintiffs allege that at the time Officer Cuevas fired his weapon, "he was standing to the north side of the truck and not immediately in front of the truck when he opened fire on Mr. Parker" and that "[a]ll of the bullets entered the vehicle through the far driver's side of the front windshield." [Id., ¶¶ 63, 64]. The Plaintiffs allege that prior to Officer Cuevas firing his weapon, "the truck's wheels were angled straight ahead, flush with the vehicle parallel to the roadway, not angled facing Defendant Cuevas to the north." [Id., ¶66]. It is the Plaintiff's position that Officer

Cuevas "was not standing in the path of the vehicle at any time prior to or during the shooting." [Id., ¶67].

The investigation of this matter was spear headed by the Mississippi Bureau of Investigation. The Biloxi Police Department Crime Scene Unit processed the scene and the physical evidence collected, including the truck driven by Parker. There were multiple alleged witnesses to the events, each of whom had a different perspective from not only each other, but also from that of Officer Cuevas. These witnesses were all standing, more or less, on either the front lawn or front porch of Stephanie Baldwin's house and would have only been able to view the rear and/or driver's side of Parker's truck. On scene, investigators noticed that although the 2014 GMC Sierra truck driven by Parker was stopped with its passenger side wheels on the grass and the driver side wheels on the asphalt, the truck was still in "Drive", with the driver side door open. (Biloxi CSU Photos, Exhibit "F"). Even so, the truck was not moving forward.

The Plaintiff requested that John Stamm, P.E. "analyze and reconstruct" the February 1, 2020 "accident". (Stamm Report, Exhibit "A", p. 1).[3] Beyond reviewing the scene and truck photographs taken by the Biloxi Police Department Crime Scene Unit, he also reviewed the various conflicting witness statements given to the police, recorded statements, and/or deposition testimony (if taken). (Id., p. 20). Stamm states in his report that the testimony or statements indicate that the truck was either stopped prior to the shooting or that it stopped immediately after the shooting. (Id., p. 30). Stamm also conducted a site inspection of 25th Street. (Id., p. 20). Stamm attempted to re-enact the events, but was not driving a 2014 GMC Sierra and his

---

[3] Stamm states he was hired to analyze the vehicle and the vehicle movement. (DP Stamm, p. 84, Exhibit "B"). Stamm is not a ballistics expert. (Id., p. 83, 154).

"exemplar truck" had both a dissimilar turning radius and wheel base from the truck driven by Parker. (Id., p. 25; DP Stamm, pp. 95-98, 101-103, 107-09, Exhibit "B"). Stamm also inspected two different GMC Sierra trucks. (Stamm Report, p. 26, Exhibit "A"). The first was a 2015 and he used this truck to confirm different features of the truck. The second was a 2014 which he used to determine how many pounds of force it would take to prevent the truck from rolling while the engine was running at idle (at approximately 500 RPM) and the vehicle in drive. (Id.). He conducted this "test" on a parking lot surface (as opposed to testing the truck when the passenger tires were on grass and the driver side tires were on asphalt). (Id.; DP Stamm, p. 138, Exhibit "B").

Stamm's "Opinions and Conclusions" are summarized on pages 31 and 32 of his Report. (Exhibit "A"). Stamm opines that *if* the truck was brought to an immediate *stop after the shooting* (as Officer Cuevas testified), then Parker "must have applied his service brake". (Id., p. 32). But, he admittedly *doesn't know if* Parker could have physically applied the service brake after the shots were fired or after he was hit. (Id.).

Stamm then goes on to opine that *if* the truck was *already stopped prior to the shooting*, then, to remain at a stop, either (a) Parker was stopped without the application of the brake and then traveled at a slow rate of speed and coasted to a stop due to the rolling resistance force of the vehicle or (b) Parker utilized his brake to stop the vehicle at the stopped location prior or possibly at the time of the shooting (as some of the witnesses testified). (Exhibit "A", p. 32).

Stamm was deposed on September 28, 2023 and he testified that each of these potential scenarios discussed in his Report were **nothing more than *possibilities*** (his words) and he could not state to a reasonable degree of probability what he believed to occur on February 1, 2023; i.e.,

he could not state with any certainty that the truck was moving or stopped prior to the shooting, or even why it stopped. (DP Stamm, pp. 117, 119-21, 140-43, 198-99, 200, Exhibit "B"). In fact, Stamm testified that he cannot say if the truck was stopped or not and that he does not have any physical evidence to help him determine this issue. (Id., pp. 118-27, 140, 144-45, 154). Because the Plaintiff attached the same Report of Stamm in the most recent expert designation, there was no need to depose Stamm a second time. Now that discovery has concluded, his opinions remain unreliable and speculative and Stamm should not be allowed to offer any opinions on the events in question.

### III. ARGUMENT

Rule 702 of the Federal Rules of Evidence lays out the test for admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of a opinion or otherwise if:
>
> (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> © the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Officer Cuevas does not dispute the qualifications of Stamm as an "accident reconstructionist". Additionally, Stamm's opinions regarding whether Parker's truck was moving in the direction of Officer Cuevas at the time of the shooting are arguably relevant to the issues in this case. Even so, Officer Cuevas questions whether Stamm's opinions are reliable. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).

As it has been explained, "'[r]eliability is determined by assessing whether the reasoning or methodology underlying the testimony is scientifically valid.'" Moody v. Walmart, Inc. 2022 U.S. Dist. Lexis 34230 (S.D. Miss. 2022) (quoting Knight v. Kirby Inland Marine Inc., 482 F.3d 347, 352 (5th Cir. 2007) (internal quotations omitted). This means:

> The subject of an expert's testimony must be 'scientific . . . knowledge. [Daubert] at 589-90, 113 S. Ct. 2786 (notation omitted). The testimony must be "ground[ed] in the methods and procedures of science" and "more than subjective belief or unsupported speculation." Id. at 590, 113 S. Ct. 2786. This is not to say it "must be 'known' to a certainty; arguably, there are no certainties in science." Id. (citation omitted). "[I]n order to qualify as 'scientific knowledge,' an inference or assertion must be derived by the scientific method." Id.

Moody, 2022 U.S. Dist. Lexis 34230 at *14-15 (quoting Paz v. Brush Engineered Materials, Inc., 555 F.3d 383, 388 (5th Cir. 2009)). Most importantly, "'nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* [... *because he says so ...*] of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" Moody, 2022 U.S. Dist. Lexis 34230 at *19-20 (quoting General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)) (citing Atl. Specialty Ins. Co. v. Porter, Inc., 742 F. App'x 850, 855 (5th Cir. 2018) (affirming exclusion of expert opinions where expert theory "seem[ed] possible" but lacked data and had not been tested)).

Applying the above to the present case, a jury will need to decide whether Parker's truck posed an immediate threat to Officer Cuevas prior to the shooting. In the Fifth Circuit, the two important facts for a factfinder to consider are: (1) "the limited time the officers had to respond"; and, (2) "the closeness of the officers to the projected path of the vehicle". Irwin v. Santiago, 2021 U.S. App. Lexis 31692 *6 (5th Cir. 2021) (citing Hathaway v. Bazany, 507 F.3d 312, 321

(5th Cir. 2007)).  Also important to this analysis is: (1) whether there was a failure to heed the officer's commands to stop, (2) the officer's position, and, (3) the period of time it took for the officer to perceive and react to the direction of the plaintiffs vehicle.  Irwin, 2021 U.S. App. Lex 31692 at *7.

Looking to the Report of Stamm, this Court should find that his proposed testimony is nothing short of confusing - and not reliable - and will not be helpful to a jury on any of the above factual issues.  When deposed, Stamm testified that he cannot state with any certainty whether the truck was moving or stopped prior to the shooting.  (DP Stamm, pp. 117-121, 140-143, 198-200, Exhibit "B").  That is, it is possible the truck was moving or it is possible that the truck was stopped when the shooting occurred.  Stamm admits that he does not have any physical evidence to determine whether the truck was moving forward or was stopped when the shots were fired.  (Id., pp. 118-127, 140, 144-145, 154).  Stamm does not offer any opinion where Officer Cuevas was located in relation to the truck at the time the shots were fired.  (Report, Exhibit "A").  Nor does Stamm offer any opinion as to the period of time it took for Officer Cuevas to perceive and react to the direction of Parker's truck.  (Id.).

Stamm did offer opinions on how it is he believes that the truck could have come to rest where it did and still be in "Drive" without any brake applied, as it was documented in the Biloxi CSU photographs.  Stamm offers what he calls "scenarios" involving whether the truck was stopped before the shooting or whether the truck came to an immediate stop after the shooting. (Report, p. 30, Exhibit "A"; DP Stamm, pp. 197-198, Exhibit "B").  Stamm opines that either (1) Parker was traveling at an unknown speed and applied the service brake to come to an immediate stop after the shooting (but it is unknown if Parker could have applied the brake after being shot

**MEMORANDUM BRIEF**

at and hit), or (2) Prior to the shooting, Parker came to a stop at the location without the brake being applied because the truck was traveling at a "slow" rate of speed after such that the truck coasted or rolled to a stop without the brake being applied, or (3) Prior to the shooting, Parker came to a stop at the location by applying the brake and the truck did not move after. (Report, pp. 30-32, Exhibit "A"; DP Stamm, pp. 121-127, 140-144, 197-200, Exhibit "B"). In his deposition, Stamm characterized each of these as "scenarios" or "options" as possibilities and admits that he cannot say which "scenario" occurred and cannot say if the service brake was applied or not. (DP Stamm, pp. 121-127, 140-144, 197-200, Exhibit "B").[4]

Based on the foregoing, Stamm's opinions are nothing more than guesses, especially given that Stamm opines in possibilities and could not state which scenario was more "probable" over the other. "'Evidence is relevant if . . . it has any tendency to make a fact more or less probable that it would be without the evidence; and the fact is of consequence in determining the action.'" Castro v. Kory, 2023 U.S. Dist. Lexis 45759 *16 (W.D. Tex. 2023). Without the ability to say what explanation was more probable, Stamm's opinions are not helpful and should be stricken.

The jury can listen to the testimony of the party-goers and Cuevas and decide for themselves if the Parker truck was moving or stopped at the time of the officer shooting. The jury does not need "possibility" testimony of Stamm to explain to them how it is the truck *could have* come to a stop if the truck was moving at the time of the shooting. Nor does the jury need

---

[4] Stamm testified that his two diametrically opposed theories (the truck was moving or it was stopped before the shooting) were "possibilities". Following a break, Stamm came back on the record and changed his testimony, claiming that each of his theories is "possible" and his opinion as to "each theory" is probable. (DP Stamm, pp. 185, 190-191, Exhibit "B"). When questioned again by defense counsel, Stamm admitted that he and Plaintiff's counsel discussed changing his testimony during the break to "probabilities" as opposed to "possibilities". (Id., pp. 194-196).

"possibility" testimony of Stamm to explain to them how it is the truck *could have* been stopped at the time of the shooting and be at that stopped location in "Drive" without the brake being depressed. Such "*could have*" opinion testimony is wholly speculative and this Court should find that Stamm's testimony is unreliable and therefore inadmissible. See e.g., Bruner v. Cemex, Inc., 2010 U.S. Dist. Lexis 146145 *4-5 (S.D. Miss. 2010) (Court held that an expert's opinion that the unevenly adjusted brakes *could have* caused the jackknife is too speculative) (citing Curtis v. M&S Petroleum, Inc., 174 F.3d 661, 668 (5th Cir. 1999) (an expert opinion must be "grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief"); Allen v. Pennsylvania Eng'g Corp., 102 F.3d 194 (5th Cir. 1996) (holding that mere "suggestiveness" of a causal relationship is not a reliable expert opinion under Daubert); Hammond v. Coleman Co., Inc., 61 F. Supp. 2d 533 (S.D. Miss. 1999) (holding that expert testimony was too speculative where the expert spoke only in terms of possibilities rather than probabilities); Kemp v. Biolab, 2005 U.S. Dist. Lexis 34035 (S.D. Miss 2005) (noting that a possibility cannot serve as a basis for recovery)).

      The Plaintiff will likely assert that all of Stamm's opinions are given to an engineering certainty and that his "possibilities" are collectively a "probability". Yet, as shown above, Stamm cannot say which opinion of the facts is probable. Either Parker was stopped at the time of this shooting (Plaintiff's version) or he was moving at the time of the shooting (Cuevas's version). Stamm cannot equivocate on which version is probable without invading the province of the jury. Both versions collectively cannot be probable because they are hopelessly in conflict. Stamm's opinions are not reliable, will confuse the jury, are not relevant, and should be excluded.

## IV.  CONCLUSION

For the foregoing reasons, Defendant Cuevas respectfully requests that the Court grant his Motion to Exclude and Strike the Testimony of the Plaintiffs' expert witness, John Stamm, P.E.

Respectfully submitted, this the 28th day of February, 2025.

>                    JASON CUEVAS
>
> BY:    COPELAND, COOK, TAYLOR & BUSH, P.A.
>
> BY:    /S/ WILLIAM E. WHITFIELD, III
>        Mississippi Bar No. 7161
>        /S/ KAARA L. LIND
>        Mississippi Bar No. 10604

William E. Whitfield, III
Kaara L. Lind
COPELAND, COOK, TAYLOR & BUSH, P.A.
Centennial Plaza
200 East Beach Boulevard, Building #5
Gulfport, Mississippi 39507
P.O. Box 10
Gulfport, Mississippi  39502-0010
telephone (228) 863-6101
telecopier (228) 863-9526
bwhitfield@wewiii.net
klind@cctb.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2025, I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

| | |
|---|---|
| Merrida (Buddy) Coxwell, Esq.<br>Courtney Sanders, Esq.<br>Coxwell & Associates, PLLC<br>P.O. Box 1337<br>Jackson, MS 39215<br>merridac@coxwelllaw.com<br>courtneys@coxwelllaw.com<br>and<br>Bhavani K. Raveendran, Esq.<br>Samantha A. Harton, Esq.<br>Romanucci & Blandin, LLC<br>321 N. Clark St., Suite 900<br>Chicago, IL 60654<br>b.raveendran@rblaw.net<br>sharton@rblaw.net<br>**Attorneys for Plaintiff** | Jeffrey S. Bruni, Esq.<br>P.O. Box 1780<br>Gulfport, MS 39502<br>jbruni@gulfport-ms.gov<br>**Attorney for Defendant,**<br>**City of Gulfport** |

>                                          */S/ WILLIAM E. WHITFIELD, III*
>                                          */S/ KAARA L. LIND*

William E. Whitfield, III
Kaara L. Lind
COPELAND, COOK, TAYLOR & BUSH, P.A.
Centennial Plaza
200 East Beach Boulevard, Building #5
Gulfport, Mississippi 39507
P.O. Box 10
Gulfport, Mississippi  39502-0010
telephone (228) 863-6101
telecopier (228) 863-9526
bwhitfield@wewiii.net
klind@cctb.com