```
 1        IN THE UNITED STATES DISTRICT COURT

 2      FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

 3                  SOUTHERN DIVISION

 4  CATINA PARKER, as Personal   )
    Representative of the Estate )
 5  of Leonard Parker, Jr.,      )
    Deceased,                    )
 6          Plaintiff,           )
      vs.                        ) No. 1:21-cv-00217
 7  CITY OF GULFPORT, a municipal)
    corporation JASON CUEVAS, in )
 8  his individual and official  )
    capacity; and JOHN DOE       )
 9  OFFICERS #1-5 in their       )
    official and individual      )
10  capacities,                  )
            Defendants.          )
11

12         The deposition of BRAD GARRETT,

13  called by the Plaintiff for examination, taken

14  via videoconference, pursuant to Notice and pursuant

15  to the Federal Rules of Civil Procedure for the

16  United States District Courts pertaining to the

17  taking of depositions, before Margaret A. Ritacco,

18  Certified Shorthand Reporter, on January 14,

19  2025, at 10:06 a.m.

20

21

22

23  Reported by:  MARGARET A. RITACCO, CSR

24  License No.:  084-002796
```



1· · · · · MR. BRUNI:· Object to the form.
2· · · · · MR. WHITFIELD:· Join.
3· · · · · THE WITNESS:· See, that's where you get me
4· ·from, ma'am.· You know, I'm hesitant to answer
5· ·this question because I don't want to say
6· ·something that's not true.· I know that I can
7· ·look at evidence and come to a conclusion.· You
8· ·know, I'm thinking, you know, situations other
9· ·than that.· I'm not talking about this
10· ·particular case.
11· · · · · · ·When I walked onto the scene, it was
12· ·obvious that there was gun fire from the front
13· ·of that truck.· And it was obvious that it
14· ·struck the windshield of that truck.· You follow
15· ·me?· I don't have to have expertise to know
16· ·commonsense.· I know that there was a gun fire
17· ·coming from the front of that vehicle to that
18· ·windshield.· That just would be a good example
19· ·of -- I mean, am I expert because of that?
20· ·BY MS. HARTON:
21· · · ·Q.· ·So, my question is more specific.· You
22· ·don't have any -- you don't have the training or
23· ·expertise to look at the Biloxi investigatory
24· ·file and determine whether or not Officer Cuevas



1  was directly in front of the vehicle, or to the

2  side of the vehicle, or somewhere else when he

3  shot at the vehicle, fair?

4·· · · MR. BRUNI:· Object to the form.

5·· · · MR. WHITFIELD:· Same objection.

6·· · · THE WITNESS:· Pardon me.· I don't mean to

7  laugh.· I'm trying to get to the base of this

8  question.· If I'm told -- for example, if I am

9  told by my crime scene unit that the casings are

10 over here, and, you know, I have a general idea.

11 But, no, I guess, exactly where he was

12 standing -- and was it my investigation --

13 immediately.· And in this case, the crime scene

14 unit would have had all those measurements and

15 determinations.

16·· · · You're right, I didn't do that.· So,

17 where do you want me to go with -- what else do

18 you want me to say?· I mean, I'm asking.

19 BY MS. HARTON:

20·· · Q.· You don't have any role in recommending

21 whether or not an officer receives any sort of

22 discipline from his employer or the --

23·· · A.· No.

24·· · Q.· -- police department, correct?



1· · · A.· ·Yes.
2· · · Q.· ·So, you don't have to have any
3· ·expertise to understand that, do you?
4· · · A.· ·No.
5· · · Q.· ·It's pretty obvious?
6· · · A.· ·Well, I think -- I absolutely -- I
7· ·mean, yeah -- I mean, you don't -- expertise is
8· ·the word that is getting me here, guys.
9· · · Q.· ·Sure.
10· · · A.· ·Okay?
11· · · Q.· ·Sure.
12· · · A.· ·I didn't -- I was an MBI since 2008
13· ·until 2023.
14· · · Q.· ·Right.
15· · · A.· ·There's a lot of experience there.
16· · · Q.· ·Right.
17· · · A.· ·A lot of experience.
18· · · Q.· ·Right.
19· · · A.· ·And common sense.
20· · · Q.· ·Right.
21· · · A.· ·And -- and I can tell you, a lot of law
22· ·enforcement is commonsense and putting things
23· ·together.· And, yeah, if there were -- if I was
24· ·told by someone that they shot at the front of



1  the vehicle -- from the front of the vehicle and
2  the bullet holes were on the side or coming
3  through the backlash, that's just common sense
4  that that didn't happen, the way they said it
5  happened.
6·     Q.· Well, here is --
7·     A.· Right?
8·     Q.· Correct.· Well, here's the bottom line
9  with me.
10·    A.· Okay.
11·    Q.· You don't have to have any particular
12  expertise, like going to school for
13  experience --
14·    A.· Yeah.
15·    Q.· -- that when Officer Cuevas said he
16  discharged his weapon in the front of the
17  vehicle and the bullet holes are coming in on
18  the side --
19·    MS. HARTON:· I'm going to --
20  BY MR. WHITFIELD:
21·    Q.· -- you don't have to be any expert,
22  right?
23·    MS. HARTON:· I'm going to object to
24  foundation and to form.



1      MR. WHITFIELD:  Sure.

2      THE WITNESS:  No.

3  BY MS. HARTON:

4      Q.   And in the like fashion, when you

5  showed up, were the shell casings still where

6  they came to rest as far as you knew?  When you

7  got there, were the shell casings still there?

8      MS. HARTON:  Object to form.

9      THE WITNESS:  As far as I know, yeah.

10     MR. WHITFIELD:  Okay.

11     THE WITNESS:  As far as I know.

12 BY MR. WHITFIELD:

13     Q.   As far you know.  And you don't know

14 anybody that altered the placement of those

15 shell casings, correct?

16     A.   No.  No.

17     Q.   And were you told by whoever it was

18 that when you came to see when you got there

19 that nobody touched anything?

20     A.   As far as somebody in particular

21 telling me that, I can't recall anybody

22 particularly telling me that.  But it was a

23 crime scene.

24     Q.   Right.



1 me, commonsense, that it wasn't from the front.

2· · · · Q.· ·Right.

3· · · · A.· ·Yeah.

4· · · · Q.· ·So, you really don't -- and by the way,

5 just a minute ago, I think that when we were

6 talking about the window glass and kind of the

7 inconsistent kind of state of the facts, if

8 Officer Cuevas said that he discharged his

9 weapon in the front of the vehicle and into the

10 front windshield, but the entry -- the entry

11 areas of those bullet holes were in the side

12 window glass of the driver, it would be

13 inconsistent -- that kind of factual evidence

14 would be inconsistent with him discharging his

15 weapon in front of the vehicle, correct?

16· · · · MS. HARTON:· Object to form.

17· · · · THE WITNESS:· Yes.

18· · · · MR. WHITFIELD:· Okay.

19 BY MR. WHITFIELD:

20· · · · Q.· ·And you don't need to be an expert to

21 see that, right?

22· · · · A.· ·No.

23· · · · MS. HARTON:· Object to form.

24· · · · MR. WHITFIELD:· Okay.



1· · · · A.· ·I would -- again, it's been awhile
2· ·since I've seen that video.
3· · · · Q.· ·Sure.· Yes, sir.
4· · · · A.· ·Okay.· I can't say for certain the
5· ·exact wording.
6· · · · Q.· ·Yes, sir.
7· · · · A.· ·But I can say there's somewhere that
8· ·I don't -- that I don't know if he was at the
9· ·time talking to Officer Cook or talking to
10· ·himself, because he spent a lot of time talking
11· ·to himself in that video.
12· · · · Q.· ·All right.
13· · · · A.· ·But at some point in there, that is
14· ·basically what I heard, in some form or fashion.
15· ·I can't tell you exactly what he said without
16· ·watching it again.· It's -- it's been awhile
17· ·since I watched that video, but I do remember
18· ·something to that effect.
19· · · · Q.· ·So the words attributable to him on
20· ·Exhibit No. 68 are, "Man, I told that dude to
21· ·stop.· I said man, slow down, the police right
22· ·there, and he kept going.· That is why they
23· ·shot.· They wasn't wrong, man.· I told him to
24· ·stop and he kept going."· Those are in quotes in



·1· ·Exhibit 68, correct?

·2· · · · · ·Did I read that correctly?

·3· · · ·A.· Yes.· You did, yes.

·4· · · ·Q.· Did you -- when you -- did you

·5· ·interview him at the police station, at the

·6· ·Gulfport --

·7· · · ·A.· Yes.· Yes.

·8· · · ·Q.· Now, when you interviewed him, were you

·9· ·aware that these particular statements --

10· · · ·A.· I -- -

11· · · ·Q.· -- were attributable to him by

12· ·Office Cook?

13· · · ·MS. HARTON:· Object to the form of the

14· ·question.

15· · · ·THE WITNESS:· No, I didn't know about any of

16· ·the video until I got it later as evidence and I

17· ·was able to watch that.· I'm not sure exactly

18· ·what time that was.· But it certainly wasn't

19· ·before I interviewed Markray at the police

20· ·station.

21· ·BY MR. WHITFIELD:

22· · · ·Q.· Right.

23· · · ·A.· I didn't.

24· · · ·Q.· All right.· So, when you interviewed



1  have recorded it.  That is something that don't
2  happen in my presence, so.
3      Q.   You would not tolerate that, had you
4  known, correct?
5      A.   Absolutely not.
6      Q.   Did any of the witnesses give you any
7  reason to believe that they were telling you
8  what you wanted to hear or telling you what
9  would have been preferable to law enforcement
10 because they felt threatened?
11     MS. HARTON:  Object to form.
12     THE WITNESS:  I don't have any reason to
13 believe that they were telling me something just
14 so they were -- because they felt threatened, is
15 that what you're saying?
16 BY MR. WHITFIELD:
17     Q.   Yeah.  What I'm asking you is, do you
18 know if any of the witnesses or were you aware
19 of any of the witnesses saying something to you
20 that was the result of them feeling threatened?
21     MS. HARTON:  Object to form.
22     THE WITNESS:  I have no reason to believe
23 that.  Again, I don't -- I can't read minds.
24 And nothing happened in my presence, I can



1  assure you that.  And I'm -- I was never told or

2  informed, or in any way made aware that

3  something happened.

4· · · · ·MR. WHITFIELD:  Okay.

5· · · · ·THE WITNESS:  Or if it did, I'm just saying,

6  it didn't in my presence.  And as far as I know,

7  nobody told me it did.

8· · · · ·MR. WHITFIELD:  Right.

9· · · · ·THE WITNESS:  That's just the fairness of it.

10· · · · ·MR. WHITFIELD:  Right.

11  BY MR. WHITFIELD:

12· · · ·Q.· Well, had that happened, would that

13  affect the overall neutrality of your -- of your

14  work product?

15· · · ·A.· It wouldn't affect what happened, but

16  it would certainly be a scar on the case file if

17  that happened.  I mean, it would be part of it.

18· · · ·Q.· Right.  Well, you, as being called in

19  with the MBI, I mean, it would kind of be your

20  job to make sure that the investigation were

21  done bias free and threat free?

22· · · ·A.· Absolutely.  Absolutely.

23· · · ·Q.· As far as you know, the product of your

24  investigations was done just that.  It was bias



1  free and it was threat free?

2· · · A.· ·True, yes.

3· · · Q.· ·Now, you mentioned something in your

4  testimony a minute ago about there was some

5  witnesses, alleged witnesses, that were in a

6  house that was close by.· And I think you

7  indicated that either you or somebody else went

8  into the house to talk to --

9· · · THE REPORTER:· Counsel, wait.· Wait.· She's

10 saying stop.· One second.

11· · · · · · · · · (Zoom technical difficulties.)

12· · · MS. HARTON:· Can you read back the last

13 minute of the transcript?· I missed everything.

14· · · MR. WHITFIELD:· I can reask the question, if

15 that helps.

16· · · MS. HARTON:· Yeah, and I would like to

17 confirm that I didn't miss anything important

18 with the court reporter.· And then I can just

19 lodge my objection if I need to.

20· · · · · · · · · (Record read as requested.)

21· · · MR. WHITFIELD:· I'm going to reask the last

22 question, at least to try to get us back to

23 square one before Sam lost her connection.

24· · · THE WITNESS:· Okay.



1     Q.   Right.

2     A.   -- to the grand jury.

3     MR. WHITFIELD:  I think that I am done with

4  my examination of this witness.  And I guess

5  we'll need to find out whether Mr. Bruni got

6  anything.

7     MR. BRUNI:  I just got a couple of questions.

8                    EXAMINATION

9  BY MR. BRUNI:

10    Q.   Captain, my name is Jeff Bruni.  I

11 represent the City of Gulfport in this case.

12 The city also is being sued in addition to

13 Officer Joseph Cuevas.

14         Can you hear me okay?

15    A.   Yes, sir, I got you.

16    Q.   Thank you.  I'm just going to do some

17 follow-up questions.  I'm going to keep them

18 very limited, after hearing thus far.

19         Is everything that you physically

20 observed at the scene of this incident

21 consistent with Officer Cuevas discharging his

22 weapon from the front of the truck?

23    MS. HARTON:  Object to form.

24    THE WITNESS:  So you're asking me did the --



·1· ·as far as the truck, like we went through

·2· ·earlier, the evidence lined up with what he

·3· ·said.

·4· · · · · ·MR. BRUNI:· Got you.

·5· · · · · ·THE WITNESS:· As far as firing his weapon

·6· ·from the front of the vehicle and where the

·7· ·truck was located, the final rest, that lines

·8· ·up.

·9· · · · · ·MR. BRUNI:· Yes, sir.· Okay.

10· ·BY MR. BRUNI:

11· · · ·Q.· And, Captain, do you have any reason to

12· ·believe that Mr. Markray, the passenger that was

13· ·in Mr. Parker's vehicle or his truck that you

14· ·interviewed, do you have any reason to believe

15· ·that Mr. Markray was not telling you truth in

16· ·his interview?

17· · · ·A.· I have, no --

18· · · · · ·MS. HARTON:· Objection, form.

19· · · · · ·THE WITNESS:· I have no reason to believe

20· ·that.· Again, it was on video, and he said

21· ·certain things alone, then he said things to the

22· ·investigators, so.

23· ·BY MR. BRUNI:

24· · · ·Q.· And, so, you have no reason to believe



1  that what he told you in your interview of him
2  was a lie or was not the truth, correct?
3· · · · MS. HARTON:· Object to form.
4· · · · THE WITNESS:· Going back to -- and I just
5  want to be clear on this.· When I interview a
6  witness, no matter who they are, I'm getting
7  their statement.· And if it lines up other
8  witnesses -- oh, excuse me, then it lines up
9  with other evidence in this case.· There did
10 appear to be some video evidence that agree, so
11 I had know reason to believe that he was lying
12 to me.
13 BY MR. BRUNI:
14· · · Q.· Okay.· And what Mr. Markray told you, I
15 think you said, lined up with the video
16 evidence, you're referring to the vehicle or the
17 dashcam video that was from Officer Cook's
18 vehicle of that crime?
19· · · A.· Yes.
20· · · Q.· But, also, too, Mr. Markray's
21 interview, what he gave you also lined up with
22 what you physically observed at the scene,
23 correct?
24· · · · MS. HARTON:· Object to form.



1· · · ·THE WITNESS:· Excuse me, counsel, can you

2· repeat that last two sentences?· I didn't --

3· BY MR. BRUNI:

4· · · Q.· So, what Markray -- what Mr. Markray

5· also told you -- I know you just said that

6· what -- the video that your observed from

7· Officer Cook's dashcam video was what the

8· statements Mr. Markray made unsolicited to

9· himself in that vehicle also lined up and were

10· consistent with what he, Mr. Markray, told you

11· in your interview with him, correct?

12· · · A.· Yes.

13· · · Q.· Okay.· In addition to that, though,

14· what Mr. Markray told you in your interview of

15· him also lined up, though, with the physical

16· evidence that you observed at the scene; is that

17· correct?

18· · · · ·MS. HARTON:· Object to form.

19· · · · ·THE WITNESS:· Yes.· I mean, it's based on the

20· fact that Officer Cuevas was in the front of the

21· vehicle.· As far as that kind of evidence goes,

22· yes.

23· · · · ·MR. BRUNI:· That's all the questions I have.

24· Thank you, Captain.



1· · STATE OF ILLINOIS )
2· · · · · · · · · · · ) SS
3· · COUNTY OF COOK· · )
4· · · · · · I, MARGARET A. RITACCO Certified
5· · Shorthand Reporter, do hereby certify that
6· · heretofore, to-wit, on the 14th day of January,
7· · 2025, BRAD GARRETT, appeared remotely via
8· · videoconference, in a cause now pending and
9· · undetermined in the United States District Court
10· ·for the Southern District of Mississippi,
11· ·Southern Division, wherein CATINA PARKER is the
12· ·Plaintiff, and CITY OF GULFPORT, et al., are the
13· ·Defendants.
14· · · · · · I further certify that the said,
15· ·BRAD GARRETT, was first duly sworn to
16· ·testify the truth, the whole truth and nothing
17· ·but the truth in the cause aforesaid; that the
18· ·testimony then given by said witness was
19· ·reported stenographically by me in the presence
20· ·of the said witness, and afterwards reduced to
21· ·typewriting by Computer-Aided Transcription, and
22· ·the foregoing is a true and correct transcript
23· ·of the testimony so given by said witness as
24· ·aforesaid.



1  ·  ·  ·  ·I further certify that the signature to
2  ·the foregoing deposition was reserved by
3  ·counsel for the respective parties.
4  ·  ·  ·  ·I further certify that the taking of this
5  ·deposition was pursuant to notice and that there
6  ·were present at the deposition the attorneys
7  ·hereinbefore mentioned.
8  ·  ·  ·  ·I further certify that I am not counsel
9  ·for nor in any way related to the parties to
10 ·this suit, nor am I in any way interested in the
11 ·outcome thereof.
12 ·  ·  ·  ·IN TESTIMONY WHEREOF:· I have hereunto
13 ·set my verified digital signature on this 28th
14 ·day of January 2025
15 ·  ·  ·  ·  ·  ·_____
16 ·  ·  ·  ·  ·  ·MARGARET A. RITACCO, CSR
17 ·  ·  ·  ·  ·  ·License No. 084-002796
18
19
20
21
22
23
24

