IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

CATINA PARKER, as Personal Representative
of the Estate of Leonard Parker, Jr., deceased                              PLAINTIFF

VERSUS                                      CIVIL ACTION NO. 1:21CV00217-HSO-BWR

The CITY OF GULFPORT, a municipal
corporation; JASON CUEVAS, in his individual
and official capacity; and JOHN DOE OFFICERS
#1-5 in their official and individual capacities                             DEFENDANTS

**MEMORANDUM OF AUTHORITIES OF CITY OF GULFPORT, MISSISSIPPI IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW the City of Gulfport, Mississippi ("City"), identified in the Complaint as a Defendant, by and through its undersigned attorneys, and submits this its "Memorandum of Authorities in Support of Its Motion for Summary Judgment" pursuant to FED. R. CIV. P. 56 ("Motion for Summary Judgment").

I.  INTRODUCTION

Plaintiff, Catina Parker ("Plaintiff") filed her original "Complaint" with this Honorable Court on June 23, 2021.  In this pleading, Plaintiff identified the City, Jason Cuevas, a Gulfport Police Officer ("Officer Cuevas"), and "John Doe Officers #1-5 (sic)" as Defendants.  Plaintiff specifically has asserted (as it appears in the caption heading and style of this suit in each and every one of the four (4) versions of her Complaint filed to date in this matter) that she is before the Court as the "personal representative of the Estate of Leonard Parker, Jr., deceased." According to Plaintiff's Complaints, the incident that gave rise to Plaintiff's claims occurred on

February 1, 2020, when Leonard Parker ("Parker"), who was driving a truck and was admittedly intoxicated at the time (in excess of the legal limits for operation of a motor vehicle in Mississippi), was shot as he was driving a truck in the direction of Officer Cuevas while the Officer was in uniform and with his police flashlight looking for the address that was the source of an emergency call regarding a "drunk and disorderly" call that requested a law enforcement response.[1]

Plaintiff has filed three (3) amended versions of her initial Complaint over the course of the past three (3) and a half years this case has been pending.[2] In all of Plaintiff's pleadings, she claims to be asserting a federal law claim against Officer Cuevas for "excessive force" under 42 U.S.C. § 1983 ("Count 1" in the Complaint) and "state law claims" against Officer Cuevas and the City for "wrongful death" ("Count 2" in the Complaint), "survival" ("Count 3" in the Complaint), and "violation of the Mississippi Tort Claims Act" ("Count 4" in the Complaint).[3]

As the basis for her claims in this proceeding, Plaintiff specifically asserts that Officer

---

[1] This call was made by one of the attendees at a birthday party, where Parker was in attendance and where alcohol was being served and consumed by many of the guests, including Parker. (MBI Case File Report, Bates Nos. 2, 9, 1314, 16, 19 ([Doc. 132-1]); Deposition ("DP") of Tremaine Markray, pp. 68-73 ([Doc. 132-13]). One of the guests (Markray) had become belligerent, obnoxious, and aggressive toward several of the other guests at the party, including his own girlfriend. His behavior and conduct motivated one of the guests at the party to call and ask for police assistance with the escalating situation. (MBI Case File Report, Bates Nos. 102-03 ([Doc. 132-1]); 911 Call ([Docs. 132-2, 134]); DP Markray, pp. 46-49, 68-69, 73-76 ([Doc. 132-13]).

[2] As an initial matter, all of the different versions of the Complaint do not adequately assert or demonstrate that Plaintiff has proper standing and capacity to be pursuing the claims herein on behalf of the Estate (or on behalf of anyone else). Nothing has been presented to the Court to demonstrate the established "heirs" of Leonard Parker, Jr., deceased, and approval of a Court for her to pursue claims on their behalf. Again, no matter which version of the Complaint is inspected – all filed over the past three (3) and a half years that this case has been pending, there has been nothing presented to substantiate these requisite jurisdictional elements.

[3] The latest filed amended version of Plaintiff's "Complaint" is styled "Third Amended Complaint at Law" [Doc. 141] and was filed on November 3, 2023.

Cuevas "violated" City policies that prohibited the type of force used by Officer Cuevas with respect to Parker and that Officer Cuevas was properly trained by the City in conjunction with this prohibition. Stated differently, Plaintiff asserts that Officer Cuevas violated City policies and training in utilizing unconstitutional force against Parker. Notably, Plaintiff has confessed she is not asserting a claim against the City under federal law.

Instead, Plaintiff contends she is asserting "state law" claims against the City for "wrongful death," "survival," "violations" of the Mississippi Tort Claims Act ("MTCA"), and is entitled to compensatory damages, punitive damages, and attorney's fees (under state law).

In an effort to be as concise as possible and with an eye toward judicial efficiency and economy of resources, the City hereby adopts and incorporates the factual background utilized by Officer Cuevas in his "Motion for Partial Summary Judgment on the Claim for Punitive Damages" [Doc. 238] and in his "Motion for Summary Judgment" [Doc. 240] and in the "Memorandum Briefs" submitted by Officer Cuevas in support of both of these Motions [Docs. 239, 241]. The entirety of these background facts will not be repeated from these Memoranda but are adopted and incorporated as if set out herein.

Suffice it to say, all of Plaintiff's "state law" claims asserted against the City in this action are subject to the MTCA and under this Act, the City is exempt (immune) from liability. Ultimately, Plaintiff has failed to discharge her burden of overcoming the City's entitlement to immunities under Miss. Code Ann. § 11-46-9(1) and, since there are no genuine issues of material fact in connection with the same, her claims under the MTCA are without legal (or factual) basis, and the City is entitled to summary judgment in accordance with Fed. R. Civ. P. 56.

## II. LAW AND ARGUMENT

*A. PLAINTIFF'S STATE LAW CLAIMS AND THE MTCA*

All claims for damages for any injury asserted under state law in Mississippi against a governmental entity, such as the City, are required to be pursued under Mississippi's "Tort Claims Act" (the "MTCA"). See Miss. Code Ann. § 11-46-7(1). As Miss. Code Ann. § 11-46-7(1) holds:

> [t]he remedy provided by this chapter against a governmental entity or its employee **is exclusive of any other civil action or civil proceeding by reason of the same subject matter against the governmental entity or its employee or the estate of the employee for the act or omission which gave rise to the claim or sui**t; and any claim made or suit filed against a governmental entity or its employee to recover damages for any injury for which immunity has been waived under this chapter shall be brought only under the provisions of this chapter, notwithstanding the provisions of any other law to the contrary.

(Emphasis added).

### 1. *"Wrongful Death," "Survival," and Statutory Immunity*

Firstly, contrary to Plaintiff's apparent belief, all tort claims brought against a governmental entity in Mississippi fall within the scope of the MTCA. There can be no separate actions for "wrongful death" or "survival" (outside of the MTCA) and "violations" of the MTCA, as is alleged in all of the different versions of Plaintiff's Complaint. Under the MTCA, a municipal corporation and its employees who are engaged in the performance or execution of duties or activities relating to "police protection" are sovereignly immune from suits arising out of the alleged acts or omissions attributed to the City or its employees unless such employees acted in reckless disregard of the safety and well-being of a person not engaged in criminal activity at the time of the alleged injury. See Miss. Code Ann. § 11-46-9(1)(c). In the case at hand, there is no question that Officer Cuevas was engaged in duties relating to police protection at the time of the incident sued upon and all versions of the Complaint admit to this. Again, he

4

was a certified law enforcement officer with the Gulfport Police Department, on duty, and in uniform and had been dispatched to respond to this area in response to an emergency call made to Gulfport Police by one of the party's guests. The burden to overcome such immunity **is on the Plaintiff**. See Simpson v. City of Perkins, 761 So. 2d 855, 857 (Miss. 2000). In the case *sub judice*, Plaintiff cannot discharge this burden. See Miss. Code Ann. § 11-46-9(1)(c).

### 2. *Criminal Activity*

As referenced above, § 11-46-9(1)(c) expressly holds that a governmental entity is exempt from liability arising out of acts or omissions of employees acting engaged in the performance or execution of duties or activities relating to police protection associated with someone engaged in criminal activity.[4] In Mississippi, the operator of a motor vehicle is engaged in criminal activity if they are impaired. An individual is in violation of Miss. Code Ann. § 63-11-30(1)(a) if there is sufficient evidence that the person operated a vehicle under circumstances indicating their ability to operate the vehicle was impaired by the consumption of alcohol. See Leuer v. City of Flowood, 744 So. 2d 266, 268 (Miss. 1999) (citing Miss. Code Ann. § 63-11-30(1)(a)). In Leuer, the Mississippi Supreme Court found that the following was sufficient for a jury to find a defendant guilty of DUI (under this statute) beyond a reasonable doubt: "[s]everal witnesses testified to the presence of alcohol, including beer cans and a

---

[4]Specifically, § 11-46-9(1) and (1)(c) read together state as follows:

"(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:

\*\*\*\*

(c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury."

5

partially consumed bottle of vodka in [the defendant's] vehicle and inside of his vehicle smelled of alcohol. Finally, four hours after the wreck, [the defendant's] blood alcohol content was .07%." Id., at 268.

In the case at bar, witnesses have testified that Parker had been consuming alcohol at the party prior to attempting to leave in his truck. Also, Parker backed up his truck and struck a mail box on the opposite side of the street as he was attempting to back out of the front yard of the house where the party was being held. (DP Officer Jason Cuevas, pp. 42-45, 47, 55-57 ([Doc. 132-14]). In addition to this, the Toxicology Report conducted as part of the official autopsy following this incident determined that Parker's blood alcohol content was 0.18%. See Exhibit "E." There is no question that Parker was engaged in criminal activity (in violation of Miss. Code Ann. § 63-11-30(1)(a)) while he was attempting to leave the party in his truck (a motor vehicle) when he encountered Officer Cuevas (while operating the motor vehicle on a City street).[5]

Under these facts, though, Parker was also in violation of Miss. Code Ann. § 63-11-30(1)(d), which makes it a criminal violation for one to have a blood alcohol content as shown by chemical analysis of the person's "breath, blood or urine" that equals or is in excess of .08% (based upon "grams of alcohol per one hundred (100) milliliters of blood, or grams of alcohol per two hundred ten (210) liters of breath") for a "person who is above the legal age to purchase alcoholic beverages under state law."[6] Again, the Toxicology Report demonstrates that Parker's

---

[5]According to Miss. Code Ann. § 63-11-30(2), the violation of any of the provisions in this statute constitutes a crime in Mississippi, the severity of which depends on whether the same amounts to a "first," "second," "third," or "fourth" or subsequent offense.

[6]There is no question that Parker, who was 53 years of age on February 1, 2020, was above the legal age to purchase alcoholic beverages under Mississippi law at that time.

blood alcohol content post-incident here was 0.18%, **which was more than twice the legal limit**. See Exhibit "E."

No matter which statute is used or analyzed, Parker was engaged in criminal activity at the time of the incident sued upon.[7] Under § 11-46-9(1)(c), the City is statutorily exempt from liability (immune), and Plaintiff's state tort claim against the City must be dismissed.

> 3. *Plaintiff's Claim that Officer Cuevas' Acts are in Violation of City Policies and Training.*

Plaintiff has further specifically asserted in this case that Officer Cuevas' acts and omissions **were in violation of City policies** and **in violation of the training** he received from the City. See Exhibit "D," p. 12. Plaintiff's Fourth Amended Complaint [Doc. 141] asserts the following:

> **"D. Defendant Cuevas used deadly force in violation of City of Gulfport's policies.**
>
> 123. Prior to using deadly force against Mr. Parker [(the decedent)], Defendant Cuevas had received training from the City of Gulfport on the proper use of force.
>
> 124. Defendant Cuevas used deadly force against Mr. Parker despite his knowledge of the City of Gulfport's policies and procedures on the use of force.
>
> 125. The City of Gulfport's policy on the use of force allows officers to use only the level of force that is reasonably necessary to stop the perceived threat.
>
> 126. The City of Gulfport's policy on the use of force authorizes police officers to use deadly force in only two situations 1) to defend themselves or others against serious threats of serious bodily injury or death, or 2) to stop dangerous felony flight, where there is serious imminent risk to the public of death or serious bodily injury.

---

[7]In addition, Officer Cuevas had given verbal commands to Parker to "stop" and Parker's refusal to adhere to the lawful commands of a law enforcement officer were in criminal violation of Miss. Code Ann. §§ 63-3-203 and 97-35-7, which demonstrate yet another finding that Parker was engaged in criminal activity at the time of this incident and that the City is statutorily immune under § 11-46-9(1)(c). Moreover, Section 63-3-1112 of the Mississippi Code imposes a duty on a driver to avoid a collision with a pedestrian.

7

127. The City of Gulfport's policy on the use of force prohibits officers from using deadly force to effect the arrest of a misdemeanor offender.

128. The City of Gulfport's policy on the use of force prohibits officers from using deadly force when it appears likely that an innocent person may be injured except in a situation that is imminently life threatening to the officer or another.

129. The City of Gulfport's policy on the use of force prohibits officers from using deadly force on a person who simply flees or evades arrest.

130. The City of Gulfport's policy on the use of force prohibits officers from using deadly force at a moving vehicle that does not pose an imminent risk of death or serious bodily injury."

See Exhibit "D," p. 12.  By specifically basing her claims on such detailed allegations, Plaintiff cannot have her cake and eat it to by trying to say that Officer Cuevas was "in the course and scope" of his employment on one hand, while saying on the other hand that he was "outside" of complying with his training and in violation of policies and orders that governed his employment.  It is clear from these detailed assertions that Plaintiff herself has made in all four (4) versions of her Complaint that Officer Cuevas was not acting in compliance with the policies, orders, and training that governed his employment.  As a result, the City cannot be held liable for acts and omissions attributed by Plaintiff to Officer Cuevas, as there is no vicarious liability that can legally be attributed to the City.

    *4. No Evidence of Reckless Disregard*

Plaintiff asserts the City is liable because Officer Cuevas' "actions" were "committed with reckless disregard (footnote omitted) to the safety and well-being of [Parker]…."  See Exhibit "D," p. 17.  Again, a law enforcement official (and his employer) is sovereignly immune from suits arising out of his alleged acts or omissions unless such official acted in reckless disregard of the safety and well-being of a person not engaged in criminal activity at the time of the alleged injury.  See Miss. Code Ann. § 11-46-9(1)(c).  "Reckless disregard" is defined by

8

Mississippi Courts as a standard that is higher than "gross negligence" and one that embraces "willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." Collins v. Tallahatchie County, 876 So. 2d 284, 287 (Miss. 2004) (citing Turner v. City of Ruleville, 735 So. 2d 226, 230 (Miss. 1999)). There is nothing to demonstrate any "willfulness" or "wantonness" with respect to Officer Cuevas' actions involving Parker. In fact, and as demonstrated by what has been presented to the Court by way of Officer Cuevas (in his "Motion" and supporting "Memorandum Brief" [Docs. 240, 241], Officer Cuevas' objective was to use what force he could to thwart what he observed to be a threat against his life (with Parker's vehicle moving toward the Officer). The Court is referred to Officer Cuevas' "Memorandum Brief" [Doc. 241] in support of his "Motion for Summary Judgment" [Doc. 240], which provides a detailed account of what Officer Cuevas observed and encountered and his actions in response to the same that led up to the incident in question occurring. It cannot go unnoticed that from the moment Officer Cuevas left his police vehicle until when the incident occurred was an extremely short period of time that was filled with a rapidly evolving fact pattern and one in which Officer Cuevas' senses were heightened due to the circumstances (responding at night to a domestic call involving alcohol and a belligerent individual). Officer Cuevas was there in response to an emergency call placed by one of the party's guests regarding a belligerent and assaultive individual.

      The street was dark and Officer Cuevas used his flashlight to illuminate and verify address numbers so that he could find the location of the house party that had made the emergency call to police. (DP Cuevas, pp. 42-45, 47, 55-57 ([Doc. 132-14]). As he did so, there was a commotion ahead of him that became louder, and he then noticed a dark colored truck backing out from the north side of 25th Street from what he thought was a driveway. Officer Cuevas saw the dark colored truck back directly across the street and into a mailbox located on

the south side of the street (the Michelle Desroche residence at 213 25th Street). It appeared to him that the truck was leaving from the residence that had reported the "drunk and disorderly" male. (Id., pp. 48-52, 64, 70). In response, Officer Cuevas started to walk toward the truck to make contact with its driver, thinking that the driver was going to stop since his truck had just struck a mailbox. (Id., pp. 71-73). While he approached the truck, he shined his flashlight at it to get the driver's attention. (Id., p. 78). Cuevas did not know at this point what had occurred in the house or whether the driver of the truck was actually the subject of the 911 call. Drawing on his law enforcement experience and training, Officer Cuevas felt that the scene needed to be secured to determine not only the facts of the call but whether a crime had been committed. (Id., pp. 42, 45, 49, 78).

While Officer Cuevas was in the middle of the street and on a path to the truck that had just struck a mailbox, this vehicle pulled forward from the mailbox, straightened out and then began to proceed eastbound on 25th Street, now angling in the direction of Officer Cuevas. (DP Cuevas, pp. 76-78 ([Doc. 132-5]). Officer Cuevas quickly activated the strobe feature on his flashlight and also removed his firearm from the holster to utilize the weapon light, all in an effort to get the driver's attention, as the Officer reasonably assumed that the driver would see him and would stop. (Id., pp. 78-79, 102-103, 145-46). Officer Cuevas also identified himself as the "**police**" and gave several commands for the truck driver to **"stop the vehicle**," yelling in a loud voice: *"Stop the vehicle! Stop the vehicle! Police! Stop the vehicle!"* (Id., pp. 81-82, 103, 141). Despite the Officer's visible presence and loud verbal commands, the truck did not stop and continued to drive towards Officer Cuevas. The headlights became brighter as the truck tracked closer and closer to the Officer and Officer Cuevas heard the engine rev up and appeared to pick up speed in his direction, which he perceived was faster than 5 mph. (Id., pp. 82-83, 103, 141, 146).

When it became apparent to him that the truck was not slowing, Officer Cuevas tried to back peddle away from the middle of the road to the south side of the road, which was closer at that point in time. (Id., pp. 92-94 and Ex. 49 to DP).  The headlights of the truck were very bright and followed Officer Cuevas towards the south side of the road.   The Court is directed at this point to the simulation video previously produced by Officer Cuevas as an attachment to his Affidavit affixed as Doc. 132-8 (Exhibit to his Affidavit in support of the prior summary judgment on qualified immunity).  This simulation demonstrates what Officer Cuevas saw from the time that Parker's truck backed into the mailbox and then pulled forward and eastbound on 25th Street toward Officer Cuevas, until the truck had come to a stop on the south side of the road, with its front passenger wheel now on the grass along the south side of 25th Street and its driver side wheel on the pavement.   Cuevas believed that the truck constituted a threat of harm or death to himself and he fired his service weapon in response toward the driver.

The record is devoid of anything to show that Officer Cuevas intentionally discharged his duty weapon at a vehicle that was not perceived by him to be driving toward him and a threat to his life.  In fact, the record physical evidence demonstrates that Parker's truck had driven at Officer Cuevas and was moving toward him up until Officer Cuevas discharged his duty weapon in response.  Again, this incident occurred at night on a dimly lit street and involved persons who had consumed significant amounts of alcohol and whose intentions were unknown by the Officer (nor could they be known by him under the circumstances).  As demonstrated, there is nothing to show that Officer Cuevas acted "maliciously" or "wantonly" here.  Consequently, the City is immune from any liability under § 11-46-9(1)(c).[8]

---

[8] The City reserves and does not waive any other immunities to which it may be entitled or afforded under Miss. Code Ann. § 11-46-9(1).

### 5. *Punitive Damages are Excluded*

Plaintiff purports to assert a "state law" claim against the City for "punitive damages." See Exhibit "D," p. 17. However, Miss. Code Ann. § 11-46-15(2) expressly holds that **"[n]o judgment** against a governmental entity or its employee for any act or omission for which immunity is waived under this chapter **shall include an award for exemplary or punitive damages**...." Miss. Code Ann. § 11-46-15(2) (emphasis added). Accordingly, Plaintiff's attempt to pursue a claim for relief for "punitive damages" under the MTCA against the City must be dismissed.

### 6. *Attorneys' Fees are Similarly Excluded*

Plaintiff also purports to assert a claim against the City under the MTCA for "attorneys' fees." See Exhibit "D," p. 17. This same statute (Miss. Code Ann. § 11-46-15(2)), though, similarly holds that **"[n]o judgment** against a governmental entity or its employee for any act or omission for which immunity is waived under this chapter **shall include an award for …. attorney's fees** unless attorney's fees are specifically authorized by law." Miss. Code Ann. § 11-46-15(2) (emphasis added). There is no such separate provision in Mississippi law authorizing attorney's fees in these circumstances. Consequently, Plaintiff's attempt to pursue a claim for relief for "attorney's fees" under the MTCA, too, must be dismissed.

### III. CONCLUSION

For each and all of the above stated reasons, it is submitted that the Court issue an Order granting the City's "Motion for Summary Judgment" in its entirety and that the Court issue an Order dismissing Plaintiff's claims against it with prejudice. It is further requested that this Honorable Court grant this Defendant all other relief, equitable or otherwise, as this Honorable

Court may find appropriate or to which it may be entitled.

RESPECTFULLY SUBMITTED, this the 28th day of February, 2025.

        CITY OF GULFPORT, MISSISSIPPI,
        DEFENDANT

        By: s/ *Jeffrey S. Bruni, Esq.*    .
           JEFFREY S. BRUNI, ESQ.
           Attorney for Movant
           MS Bar License No. 9573

JEFFREY S. BRUNI, ESQ.
POST OFFICE BOX 1780
GULFPORT, MISSISSIPPI 39502
TELEPHONE: (228) 868-5811
FACSIMILE: (228) 868-5795

## *CERTIFICATE OF SERVICE*

I, Jeffrey S. Bruni, Esq., Attorney for the Movant, do hereby certify that I have on this date had electronically filed the above and foregoing document with the Clerk of the Court using the ECF/MEC system, which should send notification of such filing to the following as well as all counsel of record who have made an appearance in this matter:

    Antonio M. Romanucci
    Bhavani K. Raveendran
    Samantha Harton
    ROMANUCCI & BLANDIN, LLC
    321 North Clark Street, Suite 900
    Chicago, Illinois 60654

    Courtney Sanders
    COXWELL & ASSOCIATES, PLLC
    Post Office box 1337
    Jackson, Mississippi 39215

    William E. Whitfield, III
    Kaara L. Lind
    COPELAND, COOK, TAYLOR & BUSH, P.A.
    Centennial Plaza
    200 East Beach Boulevard, Building #5
    Gulfport, Mississippi 39507

This the 28th day of February, 2025.

                                          *s/ Jeffrey S. Bruni*
                                          JEFFREY S. BRUNI

JEFFREY S. BRUNI, ESQ.
POST OFFICE BOX 1780
GULFPORT, MISSISSIPPI 39502
TELEPHONE: (228) 868-5811
FACSIMILE: (228) 868-5795